## CALEDONIAN COAL COMPANY *v.* BAKER.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 419.   Argued January 27, 1905.—Decided February 20, 1905.

In an action for mandamus against a judge of a territorial court in New Mexico, who, after the appeal, ceased to be judge and whose successor has consented that the action be revived against him, this court may, under the act of Congress of February 8, 1899, if in its judgment necessity exists for such action in order to obtain a settlement of the legal questions involved, substitute the name of the successor in place of the original appellee. In this case this court orders the substitution, the party substituted not to be liable for any costs prior hereto.

A court cannot acquire jurisdiction over the person of a defendant except by actual service of notice upon him within the jurisdiction or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service.

Service of a summons in an action in a territorial court of New Mexico on the president of a railway corporation, while passing through New Mexico as a passenger on a railroad train, held insufficient as a personal service of a corporation organized under an act of Congress, having offices in New York, Kansas and Illinois, and none in New Mexico; the mere ownership of lands, the bringing of suits to protect such lands, in New Mexico does not locate the corporation in New Mexico for the purposes of a personal action against it based on such a service of the summons. Nor was such service authorized by the Compiled Laws of New Mexico, 1897.

Although the state of the statute law in respect of suits like this may operate injuriously at times the situation cannot be changed by the courts—that can only be done by legislation.

THIS appeal brings up for review a final judgment of the Supreme Court of the Territory of New Mexico denying an application to that court by the Caledonian Coal Company for a writ of mandamus to compel Benjamin S. Baker, Judge of the District Court of the Second Judicial District of that Territory, to take cognizance of a certain action brought in

that court against the Santa Fé Pacific Railroad Company and others.

The petition for mandamus makes the following case:

On the seventeenth day of February, 1904, the Caledonian Coal Company, organized under the laws of New Mexico, commenced an action in the District Court of the Second Judicial District of that Territory against the Santa Fé Pacific Railroad Company, the Atchison, Topeka and Santa Fé Railroad Company, the Colorado Fuel and Iron Company and the American Fuel Company, to recover damages for alleged violations of the Interstate Commerce Act of 1887 and the Anti Trust Act of 1890.

By the ninth section of the above act of 1887 it is provided that "any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. . . ." 24 Stat. 379, c. 104. And by section 7 of the above act of 1890 it was provided that "any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the District in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee." 26 Stat. 209, c. 647.

A summons was issued against the Santa Fé Pacific Railroad Company and was returned by the Marshal of the Territory, the return stating that it was served at the above district on

the thirteenth day of May, 1904, by delivering a true copy
thereof, with a copy of the complaint thereto attached, to
E. P. Ripley, president of the defendant corporation.

The Santa Fé Pacific Railroad Company is a corporation or-
ganized and existing under the act of Congress of March 3,
1897, defining the rights of purchasers under mortgages author-
ized by an act of Congress approved April 20, 1871, concerning
the Atlantic and Pacific Railroad Company. 29 Stat. 622,
c. 374.

When the grievances set out in the petition were committed,
the Santa Fé Pacific Railroad Company was the owner of a
line of railroad within the Second Judicial District of New
Mexico and elsewhere within that Territory, but which line,
at the commencement of this action, had been sold and trans-
ferred to, and was being operated by, the Atchison, Topeka
and Santa Fé Railroad Company under a conveyance au-
thorized by an act of Congress of June 27, 1902, 32 Stat. 405,
c. 1159; was the owner of several hundred thousand acres of
land within that District; and, at the commencement of the
action for damages, was prosecuting in one of the counties of
the Territory, within the same District, suits involving the
company's title and possession of parts of those lands.

All of those lands, with the rights, privileges and franchises
appertaining thereto where acquired by the Santa Fé Pacific
Railroad Company as the successor of the Atlantic and Pacific
Railroad Company, to which last named company they were
granted by the act of Congress of July 27, 1866. 14 Stat.
292, c. 278.

The petition for mandamus alleged that by reason of the
above facts the Santa Fé Pacific Railroad Company was an
"inhabitant" of the Second Judicial District of New Mexico,
and by reason of the presence of Ripley, its president, in that
Territory and within that District and the service of summons
in the above action upon him as such president, the company
was "found" in the District within the meaning of the acts
of Congress.

Nevertheless, the defendant Baker, Associate Justice of the Supreme Court of the Territory and Judge of the District Court of the Second Judicial District, quashed the return of the above summons and refused to assume jurisdiction of the action, so far as the Santa Fé Pacific Railroad Company was concerned, or to require that company to answer the declaration or complaint filed by petitioner.

The defendant Baker made a return to a rule issued against him to show cause. From that return it appeared that the Santa Fé Pacific Railroad Company specially appeared in the action for the purpose of moving and did move to quash the service of process, upon grounds set forth in an affidavit of its president. In that affidavit Ripley stated that when served with summons he was only a passenger on a railroad train passing through the Territory; that the company had its office in the city of New York, while its land commissioner had an office at Topeka, Kansas, and its president an office at Chicago, Illinois; that the company had no property in the Territory of New Mexico, except lands acquired by it under a foreclosure of a mortgage of the Atlantic and Pacific Railroad Company, and which lands were undisposed of; that it has had no office or place of business in the Territory since the sale of its road. This affidavit was used on the hearing of the motion to quash, and the facts stated in it were not contradicted.

The contention of the company, therefore, was that the service in question was insufficient to bring the company, personally, before the court.

The return of the judge also stated that the actions in ejectment brought by the railroad company against trespasses upon its property were instituted prior to the sale of its railroad property and franchises to the Atchison, Topeka and Santa Fé Railroad Company; and that the refusal of the judge to assume jurisdiction in the case referred to was upon the ground that the service upon Ripley as president of the company was not, in his opinion, sufficient to subject it personally to the jurisdiction of the court.

The relief sought was an alternative writ of mandamus, directing Judge Baker to assume jurisdiction of the cause, so far as the Santa Fé Railroad Company was concerned; and to require that company to plead, answer or demur.

The Supreme Court of the Territory, after hearing the case, upon the pleadings, return and the proofs, denied the petition for mandamus and dismissed the application. From that order the present appeal was prosecuted.

*Mr. Neill B. Field* for appellant:

The District Court had jurisdiction of the subject matter of the original action. Section 17, Organic Act, New Mexico, 9 Stat. 452; § 1910 Rev. Stat.; 26 Stat. 209; 24 Stat. 379.

If the District Courts of the Territories, when sitting for the trial of causes arising under the Constitution and laws of the United States, are not invested with jurisdiction to administer the remedy here invoked, then persons and corporations violating these statutes, and confining their operations to the Territories need not respond in damages, however flagrant their violations of the law. They cannot be sued, in the United States Circuit or District Courts, because the jurisdiction of those courts does not extend to the Territories; and if they cannot be sued in the territorial courts, they cannot be sued at all.

The District Courts of the Territories are invested with admiralty jurisdiction which is analogous on the question of jurisdiction. *City of Panama*, 101 U. S. 458; *Insurance Co.* v. *Canter*, 1 Pet. 511; and see construction of act of March 3, 1887, 24 Stat. 505, and cases cited; *In re Cooper*, 143 U. S. 494; *United States* v. *Foreman*, 5 Oklahoma, 237; *Johnson* v. *United States*, 6 Utah, 407; *United States* v. *Johnson*, 140 U. S. 703.

The Santa Fé Pacific Railroad Company is not a "foreign" corporation in New Mexico.

The fundamental error of the court below lies in the assumption that the company is a "foreign" corporation in

New Mexico. The assumption is supported by no reasoning, but that the court did so assume appears from the opinion. See act of incorporation, 29 Stat. 622. A corporation created by or under authority of an act of Congress has its domicile in every place where it may lawfully exercise its corporate powers. *Bank of Augusta* v. *Earle,* 13 Pet. 588; 1 Thomp. on Corp. § 681; 2 Morawetz, § 984; *Commonwealth* v. *Tex. & P. R. R. Co.,* 98 Pa. St. 100; *California* v. *Pac. R. R. Co.,* 127 U. S. 39.

The railroad company holds its lands in New Mexico under the authority of Congress, and that authority is clearly not subject to be circumscribed by territorial legislation. The franchise to exist as a corporation is on the same footing. *Com.* v. *Tex. & Pac. R. R. Co.,* 127 U. S. 39; *Van Dresser* v. *Oregon Ry. & Nav. Co.,* 48 Fed. Rep. 202; *Pac. R. R. Removal Cases,* 115 U. S. 1; *Bank of U. S.* v. *Roberts,* 2 Fed. Cas. 728.

The Santa Fé Pacific Railroad Company was "found" within the district in which the suit was brought.

The court below treated the railroad company as being on the same footing with a corporation chartered by a State, citing *United States* v. *Southern Pacific Railroad Company,* 49 Fed. Rep. 297, but this case does not sustain the proposition.

As to how service may be made on domestic corporations, see Comp. Laws, New Mexico, 1897, §§ 450, 2963; *Kansas R. R. City* v. *Daugherty,* 138 U. S. 298.

The contention of the railroad company must be clearly established and it affirmatively appears from the answer that service on it was sufficient, and that appellant is entitled to the relief prayed for. *New Haven &c. Co.* v. *Dowington Co.,* 130 Fed. Rep. 605; *United States* v. *Southern Pac. R. Co.,* 49 Fed. Rep. 297; *Cosmopolitan &c. Co.* v. *Walsh,* 193 U. S. 460.

*Mr. Robert Dunlap* for appellee:

It does not sufficiently appear that the District Court obtained jurisdiction in a personal action so as to enable it to render a personal judgment against the Santa Fé Pacific Rail-

road Company by the service made on its president while he was casually passing through the district and was not at the time representing the railroad company. The railroad company was not so identified with its president at the time in that district as to render the service of summons upon him a service upon it so as to subject it to the orders or judgments of that court. *Goldey* v. *Morning News Co.,* 156 U. S. 521; *Mex. Cent. Ry. Co.* v. *Pinkney,* 149 U. S. 209; *Harris* v. *Hardeman,* 14 How. 339; *Phillips* v. *Burlington Library Co.,* 141 Pa. St. 462.

A corporation can be said to have a technical *habitat* or place of residence only in the State or district where its corporate meetings are held. *G., H. & San Ant. Ry. Co.* v. *Gonzales,* 151 U. S. 496; *Int. Com. Comm.* v. *Tex. & Pac. Ry. Co.,* 57 Fed. Rep. 949; *Jones* v. *Scottish Accident Ins. Co.,* L. R. 17 Q. B. Div. 421; *Watkins* v. *Scottish Imperial Ins. Co.,* L. R. 23 Q. B. D. 285; *Frick Co.* v. *Norfolk & W. R. Co.,* 26 Fed. Rep. 725; *Lafayette Ins. Co.* v. *French,* 18 How. 408.

The service of summons, even upon the president of a corporation while temporarily in a State or district in which the corporation is not at the time transacting its business, is not a valid service upon the corporation, even though the local laws should authorize the same, because such president does not then represent that corporation. *Saint Clair* v. *Cox,* 106 U. S. 350; *Goldey* v. *Morning News,* 156 U. S. 518; *Construction Co.* v. *Fitzgerald,* 137 U. S. 106; *Mecke* v. *Valleytown Mineral Co.,* 93 Fed. Rep. 697; Beale on For. Corp. § 270.

The rule is the same even though the corporation at some period prior to the service had been engaged in business in the particular State or district, or that some officer of the corporation had at all times resided therein. The corporation has the right to withdraw from the State or district, and when it is no longer represented in such State or district by an agent transacting therein its ordinary business, it cannot be said to be present therein at the time. *Conley* v. *Mathieson Alkali Works,* 190 U. S. 406; *Geer* v. *Mathieson Alkali Works,* 190

U. S. 428; *DeCastro* v. *Compagnie Francaise &c.*, 76 Fed. Rep. 426; *Earle* v. *Chesapeake & Ohio R. Co.*, 127 Fed. Rep. 235; *Cady* v. *Associated Colonies*, 119 Fed. Rep. 420; *Eldred* v. *Am. Palace-Car Co.*, 105 Fed. Rep. 455; Beale on For. Corp. §§ 279, 281.

The railroad company may still own lands within the Territory of New Mexico without being represented therein by any authorized agency. Owning or holding lands in such district is not doing or transacting its business therein. *Mo. Coal & Mining Co.* v. *Ladd*, 160 Missouri, 435; nor is it doing business in the Territory by prosecuting suits. *McCall* v. *Mortgage Co.*, 99 Alabama, 427; *St. L., A. & T. Ry. Co.* v. *Fire Assn.*, 55 Arkansas, 163; *Utley* v. *Mining Co.*, 4 Colorado, 369.

The test is whether the corporation has an agency within the district transacting therein its ordinary business so that it may be said to be impersonated in or represented by such agency for general purposes, including its subjection to the service of process therein. *Saint Clair* v. *Cox*, 106 U. S. 351; *United States* v. *Am. Bell Tel. Co.*, 29 Fed. Rep. 17.

The District Court has no jurisdiction. It is a terminal court and was not included in § 9, act of February 4, 1887, 24 Stat. 382. *Reynolds* v. *United States*, 98 U. S. 145, 154; *McAllister* v. *United States*, 141 U. S. 174. As to what is a court of competent jurisdiction under act of March 3, 1887, see *Union Switch Co.* v. *Hall Signal Co.*, 65 Fed. Rep. 625, and as to what is meant by "where defendant resides or may be found" under act of July 2, 1890, see *United States* v. *Bell Tel. Co.*, 29 Fed. Rep. 34; *Maxwell* v. *A., T. & S. F. R. R. Co.*, 34 Fed. Rep. 286; *Bentlif* v. *London &c. Corporation*, 44 Fed. Rep. 667; *Clews* v. *Woodstock Iron Co.*, 44 Fed. Rep. 31; *St. Louis Wire Co.* v. *Consolidated Wire Co.*, 32 Fed. Rep. 802; *Good Hope* v. *Railway Fencing Co.*, 22 Fed. Rep. 635.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

At the present term the appellant suggested that Judge

Baker had been succeeded in office by Judge Ira. A. Abbott. And it moved that such order be made in the premises as would be conformable to the rules and practice of this court. Judge Abbott consents that the action may be revived against him as the successor of Judge Baker, and proceed to a hearing, without further summons or notice, upon the record as now presented to the court.

The first question to be considered is whether it is competent for this court, Judge Baker having ceased to be judge, to substitute the name of his successor, as the appellee.

In *United States* v. *Boutwell*, 17 Wall. 604, 607, which was a mandamus against Mr. Boutwell as Secretary of the Treasury, it appeared that after the case was brought to this court the defendant resigned his office. Thereupon a motion was made to substitute the name of his successor, Mr. Richardson. It did not appear that any previous application was made to the latter for leave to substitute his name, and he opposed the motion, which was denied.

Mr. Justice Strong delivered the opinion of the court, saying: "The office of a writ of mandamus is to compel the performance of a duty resting upon the person to whom the writ is sent. That duty may have originated in one way or in another. It may, as is alleged in the present case, have arisen from the acceptance of an office which has imposed the duty upon its incumbent. · But no matter out of what facts or relations the duty has grown, what the law regards and what it seeks to enforce by a writ of mandamus, is the personal obligation of the individual to whom it addresses the writ. If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right. Hence it is an imperative rule that previous

to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively inferred. Thus it is the personal default of the defendant that warrants impetration of the writ, and if a peremptory mandamus be awarded, the costs must fall upon the defendant." The court proceeded: "It necessarily follows from this, that on the death or retirement from office of the original defendant, the writ must abate in the absence of any statutory provision to the contrary. When the personal duty exists only so long as the office is held, the court cannot compel the defendant to perform it after his power to perform has ceased. And if a successor in office may be substituted, he may be mulcted in costs for the fault of his predecessor, without any delinquency of his own. Besides, were a demand made upon him, he might discharge the duty and render the interposition of the court unnecessary. At all events, he is not in privity with his predecessor, much less is he his predecessor's personal representative. As might be expected, therefore, we find no case in which such a substitution as is asked for now has ever been allowed in the absence of some statute authorizing it." That case was followed by *United States* v. *Chandler*, 122 U. S. 643; *United States* v. *Lochren*, 164 U. S. 701; *Warner Valley Stock Co.* v. *Smith*, 165 U. S. 28, and *United States ex rel. &c.* v. *Butterworth*, 169 U. S. 600, 604, 605. In the latter case the court, after referring to prior cases, concluded its opinion in these words: "In view of the inconvenience, of which the present case is a striking instance, occasioned by this state of the law, it would seem desirable that Congress should provide for the difficulty by enacting that, in the case of suits against the heads of Departments abating by death or resignation, it should be lawful for the successor in office to be brought into the case by petition, or some other appropriate method."

Later, Congress, its attention being thus called to the matter, passed the act of February 8, 1899, c. 121, by which it was provided: "That no suit, action, or other proceeding lawfully commenced by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained by or against his successor in office, and the court may make such order as shall be equitable for the payment of costs." 30 Stat. 822.

In view of the reasons assigned, in the *Boutwell* case, for the inability of the court, in mandamus proceedings, to substitute an existing public officer as a party in the place of his predecessor, who had ceased to be in office, we perceive no reason why, under the act of 1899, the successor of Judge Baker may not be now made a party in his stead. Certainly, the statute authorizes that to be done, if in the judgment of the court, there is a necessity for such action in order to obtain a settlement of the legal question involved. We think such a necessity exists in this case, and as Judge Abbott waives any formal summons and consents to the substitution of his name in place of that of Judge Baker, the motion of appellant is granted, and such substitution is ordered to be and is now made, subject, however, to the condition that he shall not be liable for any costs prior to this date.

We come now to the merits of the case.

The act under which the Territory of New Mexico was created and organized, approved September 9, 1850, provides that the legislative power of the Territory of New Mexico should extend to all rightful subjects of legislation consistent with the Constitution of the United States. The same act

divides the Territory into three judicial districts and requires a District Court to be held in each of such districts by one of the justices of the Territorial Supreme Court. It also provides: "Each of the said District Courts shall have and exercise the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States; . . ." This provision was retained in the Revised Statutes of the United States, § 1910.

The present case clearly arises under the laws of the United States; for, the action brought in the Territorial District Court was expressly based on the Interstate Commerce Act of 1887 and the Anti Trust Act of 1890.

And the question arises upon the very face of the record whether the Territorial District Court could take cognizance at all of suits for damages authorized by those acts. We have seen that by section 9 of the above act of 1887 any person or persons alleged to have beeen damaged by a common carrier, embraced by the provisions of that act, may bring suit in his or their own behalf "in any District or Circuit Court of the United States of competent jurisdiction;" and by the above act of 1890 any person injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by that act may sue therefor "in any Circuit Court of the United States in the district in which the defendant resides or is found."

Although by the statutes in force prior to the passage of the Interstate Commerce (1887) and Anti Trust Acts (1890), the Territorial District Courts of New Mexico were given the same jurisdiction in cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States, are those acts to be construed as excepting from the general jurisdiction of the Territorial District Courts cases that may arise under them? In other words, can a suit for damages under either of those acts be brought in any court except, under the act of 1887, in a Circuit

or District Court of the United States, and, under·the act of 1890, in a Circuit Court of the United States?   Did Congress intend that only courts of the United States, invested by the Third Article of the Constitution with the judicial power of the United States, *McAllister* v. *United States*, 141 U. S. 174 should have original jurisdiction of suits of that character? The questions suggested by these inquiries were not much discussed by counsel, and we pass them as being, in our view of the case, not necessary to be now decided; for, if a controversy like that raised by the plaintiff is equally cognizable by a Territorial District Court or by a Circuit or District Court of the United·States, it would still remain to inquire whether the defendant company was brought before the court in which the suit was instituted in such way that a personal judgment could be rendered against it?

It is firmly established that a court of justice cannot acquire jurisdiction over the person of a defendant, "except by actual service of notice within the jurisdiction upon him or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service." *Goldey* v. *Morning News*, 156 U. S. 518, 521; *Pennoyer* v. *Neff*, 95 U. S. 714; *Mexican Central Railway* v. *Pinkney*, 149 U. S. 194, 209; *United States* v. *American Bell Tel. Co.*, 29 Fed. Rep. 17. · This principle is applicable to all courts.

. We are of opinion that the service of summons upon Ripley, as president, while he was passing through the Territory on a railroad train was insufficient as ·a· personal service on the company of which he was president.   It is true that the company owned lands in the Territory, but its office, at which the meetings of its directors were held, was in the city of New York, while the office of its land commissioner was at Topeka, Kansas, and the office of its president was at Chicago, Illinois. The mere ownership of lands in New Mexico, or the bringing of suits there to·protect its lands against trespasses, could not have had the effect to put the company into that Territory for the purposes of a personal action against it based on service ·

of summons upon one of its officers while passing through the Territory on a railroad train. If by the laws of New Mexico a party having a cause of action against the company, based on the acts of 1887 and 1890, could have sued out an attachment and caused it to be levied upon its lands in the Territory in order to secure the satisfaction of any judgment he might finally obtain in such action—upon which point we express no opinion—it would not follow that a personal judgment could have been rendered against the company. In such case the judgment of the court could not affect anything except the lands attached. No personal judgment could have been rendered against the company by reason merely of such attachment.

It is contended that the case is covered by section 450 of the Compiled Laws of New Mexico, 1897. That section provides that: "In suits against any corporation, summons shall be served in that county where the principal office of the corporation is kept or its principal business carried on, by delivering a copy to the president thereof, if he may be found in said county, but if he is absent therefrom, then the summons shall be served in like manner in the county, on either the vice-president, secretary, treasurer, cashier, general agent, general superintendent or stockholder, or any agent of said corporation, within such time and under such rules as are provided by law for the service of such process in suits against real persons, and if no such person can be found in the county where the principal office of the corporation is kept, or in the county where its principal business is carried on, to serve such process upon, a summons may issue from either one of such counties, directed to the sheriff of any county in this Territory where any such person may be found and served with process. If such corporation keeps no principal office in any county, and there is no county in which the principal business of such corporation is carried on, then suit may be brought against it in any county where the above-mentioned officers, or any or either of them may be found; *Provided*, That the plaintiff may,

in all cases, bring his action in the county where the cause of action accrued."

Counsel for appellant substantially concedes that this statute applies only to domestic corporations, that is, corporations created by or organized under territorial enactments. But if it is to be assumed that these provisions could be made applicable to a corporation created by an act of Congress, and that for the purposes of suit such a corporation may be deemed a domestic corporation in any State or Territory which it might lawfully enter, still, it is evident that the above section cannot avail the plaintiff. The Santa Fé Railroad Company, when sued in the Territorial District Court, was not an inhabitant of the district within the meaning of the local statute; it had no principal or other office in the Territory; nor did it have an officer who could, in a legal sense, be "found" there; nor did it, in any just sense, carry on business in the Territory. The company simply owned lands there, and that fact was not sufficient by itself to bring the case within the provisions of the territorial statute. This state of the law may sometimes operate injuriously upon those who may wish to sue the railroad company in the territorial courts. But the situation cannot be changed by the courts. That can only be done by legislation.

For the reasons stated the judgment of the Supreme Court of the Territory must be

*Affirmed.*