## THE PULLMAN COMPANY *v.* CROOM, COMPTROLLER OF THE STATE OF FLORIDA.

## SAME *v.* SAME.

### APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

Nos. 28, 158.   Argued October 31, November 3, 1913.—Decided December 22, 1913.

A suit to enjoin a public officer from enforcing a statute is personal, and in the absence of statutory provision for continuing it against his successor, abates upon his death or retirement from office. *United States* v. *Boutwell*, 17 Wall. 604.

The only exceptions recognized to this rule are boards and bodies of quasi-corporate character having continuous existence. *Marshall* v. *Dye, ante,* p. 250.

The act of February 8, 1899, c. 121, 30 Stat. 822, providing for substituting the successors in office of public officers, applies only to Federal officials and not to state officials.

Where the only state official, as to whom an injunction against enforcing a state statute has been applied for under § 266 of the Judicial Code and denied, dies pending the appeal, the action abates and the appeal to this court will be dismissed.

In such a case an order based upon a stipulation continuing the case against the successor of the deceased defendant must and can be vacated, there having been no final judgment in the case.

The fact that other officials had been joined as defendants cannot give this court jurisdiction of an appeal from an order denying an injunction applied for under § 266 of the Judicial Code where the injunction had only been asked against an officer who has died pending the appeal.

THESE are appeals from orders of the Circuit Court of the United States for the Northern District of Florida.

The Pullman Company, appellant herein, in its complaint filed in the court below, in the first case (No. 28

of this term), alleged that it was an Illinois corporation, engaged in furnishing to railroad companies under contract parlor, dining and sleeping cars in Florida and other States and had complied with the laws of Florida requisite to engaging in that business; that the defendant, A. C. Croom, was the duly qualified Comptroller of the State of Florida, charged with the collection of all taxes due from such companies.   It averred that chapter 5597 of the laws of Florida for the year 1907 provides for the payment of license taxes to the State, and that it had paid such taxes; that § 46 of chapter 5596 provides for the collection of an *ad valorem* tax upon the cars of sleeping and parlor car companies, and that it had satisfied such tax.   The appellant further averred that by the provisions of an act approved June 1, 1895, which by sundry amendments had been reenacted and incorporated into chapter 5596, being § 47, sleeping and parlor car companies operating their cars in the State were required to annually report, under oath, the total amount of the gross receipts of business done between points in the State to the Comptroller of the State, and to pay into the State Treasury $1.50 upon each $100 of such gross receipts, and in event of failure to make the report and pay the tax the Comptroller was authorized to estimate the amount of such gross receipts from the information he might obtain and to add a penalty of ten per cent. of the tax, and to collect it, with costs and penalties, the same as other delinquent taxes.

The appellant stated that since the passage of the act in 1895 and up to 1907, no property tax had been levied upon it and that it had therefore taken the act of 1895 to impose a tax upon its property and had paid the amount required by it; but it asserted that the act of 1907, § 46 of chapter 5596, contained an *ad valorem* tax, and it stated that it had not made a report of its business on January 1, 1910, or January 1, 1911, as required by the act and had not paid the tax provided for, and that the defendant had demanded

by wire that the reports be sent in at once. It assailed the constitutionality of the law, and pleaded allegations to support its claim to jurisdiction of the case by the court in equity. It prayed that the defendant be restrained and enjoined from estimating the gross receipts of the company and adding the penalty and from issuing a warrant for the collection of the tax, as provided by § 47 of chapter 5596, and from taking any action to enforce the payment of such tax or penalty, and that the act be declared void.

A restraining order was granted, but upon application for an injunction *pendente lite,* the Circuit Judges for the Fifth Circuit held that § 47 of chapter 5596, taken in connection with chapter 5597, provides for a graded license tax on all sleeping and parlor car companies operating their cars in the State and is within the legislative power of the State, and that until the complainant had complied with the requirements of the act it had no standing in equity, and denied the application. Thereupon an appeal was sued out to this court.

Thereafter the defendant notified the complainant that unless it made report within a time stated he would proceed to estimate the amount of the gross receipts and take such further action as the statute warranted. The complainant then, under protest, filed its return for the years ending October 31, 1909, and October 31, 1910, but did not pay the tax required by the act. The defendant issued a warrant of the State to the sheriff of Duval County, who levied upon one of the complainant's cars, and the complainant paid the taxes for the years 1909 and 1910, with costs.

The complainant later filed its bill in the second case (No. 158 of this term), containing practically the same allegations as its former bill, with additional averments with reference to the return and tax for the year 1911, and statements concerning the payment of the taxes for 1909

and 1910. W. V. Knott, Treasurer of the State of Florida, was made a defendant and the complainant prayed that he be compelled to repay the taxes and costs collected by the sheriff and turned over to him. The Circuit Judges again denied the application for an injunction *pendente lite*, upon the ground that § 47, read in connection with chapter 5597, provides for a graded license tax and is legal. An appeal was likewise sued out to this court.

On April 21, 1913, by stipulation and order, W. V. Knott was substituted for the appellee, A. C. Croom, in both cases, Croom having died and Knott having succeeded him in the office of Comptroller; and J. C. Lunning was substituted for the appellee, W. V. Knott, in the second case, having succeeded him as Treasurer.

*Mr. Frank B. Kellogg*, with whom *Mr. Gustavus S. Fernald* was on the brief, for appellant.

*Mr. T. F. West*, Attorney General of the State of Florida, with whom *Mr. Park Trammell*, former Attorney General of the State of Florida, was on the brief, for appellee.

After making the foregoing statement, MR. JUSTICE DAY delivered the opinion of the court.

Section 266 of the Judicial Code, practically a reënactment of § 17 of the act of June 18, 1910 (c. 309, 36 Stat. 539, 557), regulates the granting of injunctions by Federal courts in cases depending upon the alleged repugnancy of state statutes to the Federal Constitution. The requirement is that applications for temporary injunction in such cases shall be heard before three judges, one of whom shall be a justice of this court or a circuit judge, and an appeal from an order granting or denying an interlocutory injunction in such cases may be prosecuted directly to this court. These appeals are brought under that

section. They are from the orders of the court below denying the application for an interlocutory injunction. In that aspect alone the cases are now before the court. In the second suit, it is true, the Treasurer was brought in, with a view to the recovery from him of the moneys wrongfully collected over the protest of the Pullman Company; but no injunction was asked against him, and his presence in the case does not concern the inquiry as to the right to the temporary injunction against the Comptroller, restraining him from levying and collecting the taxes.

The order of substitution was made upon the stipulation and was granted without discussion. In the brief of the Attorney General the matter is submitted to the decision of the court, with an expression of doubt as to whether such substitution of parties can be made in cases of this character, and the question is thus called to the court's attention. In this situation the cases are controlled by the repeated adjudications of this court governing the right of substitution where relief is sought against persons who are situated as was the Comptroller in this case.

The leading case upon substitution of parties in such cases is *United States* v. *Boutwell*, 17 Wall. 604, which involved the right to substitute in a suit for mandamus the successor of the Secretary of the Treasury for the one who held that office at the time the suit was commenced. Mr. Justice Strong, who delivered the opinion of the court, pointed out that the purpose of a writ of mandamus is to enforce the personal obligation of the individual, no matter how the duty arose, and that even if the party be an officer and the duty official, mandamus does not reach the office, but is directed solely to the person, who alone can be punished for failure to conform to the mandate, and the suit is therefore a personal action based upon the alleged fact that the defendant has failed to perform a personal duty. And the court concluded that, since the

personal duty of the defendant lasted only so long as he occupied the office, and as his successor was not his personal representative and could not. be held responsible for his delinquencies, for the successor might have acted differently than the defendant, such action, in the absence of a statute to the contrary, must abate upon the death or retirement from office of the original defendant. This case has been uniformly followed, and applied to suits for injunction as well as for the writ of mandamus. *Warner Valley Stock Co.* v. *Smith,* 165 U. S. 28, 33.

· And in *United States ex rel. Bernardin* v. *Butterworth,* 169 U..S. 600, it was held that the substitution could not be made, although consent was given by the successor in office. In that case it was suggested that in view of the present state of the law it seemed desirable that Congress should provide for the difficulty by enacting a statute which would permit the successors of heads of departments who had died or resigned to be brought into the case by appropriate method. Thereupon Congress passed the act of February 8, 1899 (c. 121, 30 Stat. 822), under the provisions of which, by proper steps, successors of officers of the United States may be.substituted for them in suits commenced against the latter in their official capacity. Subsequently, in *Caledonian Coal Co.* v. *Baker,* 196 U. S. 432, 442, this court held, after noticing the cases of *United States* v. *Boutwell, supra,* and *United States ex rel. Bernardin* v. *Butterworth, supra,* and other cases, and the statute just referred to, that, in so far as the successor to a territorial district judge was concerned, the statute had authorized substitution.

The above cases establish the practice of this court, and until the statute of 1899 the practice was uniformly adhered to. That statute affects only Federal officials and leaves the doctrine of the prior cases undisturbed as to the substitution of state officials. The only exception recognized in the decisions of this court has been boards

and bodies of a quasi-corporate character, having a continuing existence.    See *Marshall et al.* v. *Dye, ante,* p. 250.

In *Richardson* v. *McChesney,* 218 U. S. 487, this court held that the defendant, McChesney, although named as Secretary of the Commonwealth of Kentucky, was sued personally, and concluded that (p. 493) "as his official authority has terminated, the case, so far as it seeks to accomplish the object of the bill, is at an end, there being no statute providing for the substitution of McChesney's successor in a suit of this character.    The case is governed by *United States* v. *Boutwell,* 17 Wall. 604; *United States ex rel. Bernardin* v. *Butterworth,* 169 U. S. 600, and *Caledonian Coal Co.* v. *Baker,* 196 U. S. 432, 441."

It therefore follows that in the present aspect of these cases, upon appeal from orders denying an interlocutory injunction, the only party appellee involved in this inquiry, A. C. Croom, Comptroller, having died pending the proceedings and there being no statute concerning such cases, the order of substitution made at the former term must be vacated, the matter being still within the control of the court, there having been no final judgment in the case (*Iowa* v. *Illinois,* 151 U. S. 238).

It will therefore be ordered that these appeals be dismissed for want of a proper appellee to stand in judgment upon the only question brought to this court,

*And it is so ordered.*