**BOWERS, Collector of Internal Revenue, v. AMERICAN SURETY CO.**

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 58.

Charles H. Tuttle, U. S. Atty., of New York City (Edward Feldman, Asst. U. S. Atty., of New York City, of counsel), for appellant.

George L. Naught and Samuel H. Kaufman, both of New York City (Sylvester Pindyck, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ■ Section 250(b) of the Revenue Act of 1918 (40 Stat. 1083) provided that, if the Commissioner should determine that the amount paid by a taxpayer was less than should have been paid, the balance should be paid upon notice and demand by the collector. Section 3187 of the Revised Statutes (26 USCA § 116) provided that, if any person was liable to pay taxes which for ten days after notice and demand it neglected to pay, the collector might distrain upon his chattels and land. It is quite true that, in an action at law to recover a tax, the United States must prove that the tax is due (U. S. v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Clinkenbeard v. U. S., 21 Wall. 65, 22 L. Ed. 477), though the assessment makes a prima facie case (Becker v. U. S., 21 F.[2d] 1003 [C. C. A. 5]). But the duty is nevertheless imposed to pay the assessment and carries the sanction of the distress which the taxpayer has no means of avoiding. ■ The bond in suit was a substitute for the duty to pay the assessment and was intended to hold off the distress. The condition was not that the L. C. Blancke Company should pay the tax due, but the tax assessed so far as the Commissioner should not abate it within the year. This is plain from the language of the recitals which the condition incorporated by the word "aforesaid." These say that the collector whose duty it is to collect the assessment has assessed the tax, and that the taxpayer wishes him to suspend "the collection thereof." The words relied upon by the appellee, "until paid as required by law," do not modify this language, but refer to the payment of the assessment required by section 250(b). This being true, the bond became due as soon as the Commissioner denied the rebate, and the defendant was liable for its principal's default. Gray Motor Co. v. U. S., 16 F.(2d) 367 [C. C. A. 5]; U. S. v. Onken Bros. Co. (D. C.) 23 F.(2d) 367; McCaughn v. Phil. Barge Co. (D. C.) 27 F. (2d) 628.

■ The learned District Judge agreed so far, but it seemed to him that the circumstances of the bankruptcy established "equities" which forbade the recovery. This appears to us erroneous for several reasons. The United States was not estopped by the order expunging the claim; it was not a party to the bankruptcy proceedings; on the contrary, it steadfastly refused to be drawn into them. The surety could not conclude it by a suit which it would not undertake, whatever might be its liability for refusing to undertake it. Apparently the appellee supposes that the case is like those in which a person secondarily liable may, when sued, vouch in the principal and so fix as between them the fact and extent of his liability. Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712; In re Boyer (C. C. A.) 25 F.(2d) 602, 607; Oceanic Steam Nav. Co. v. Compania Transatlantica, Espanola, 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 68. But that is quite another matter from estopping the obligee by a judgment between the surety and the principal, a result which would take the collection of the claim out of the obligee's hands and subject him to the event of a suit which he has no duty to promote.

Moreover, the issues decided by the bankruptcy court were irrelevant in any event; they concerned, and could concern, only the question whether the tax had been properly assessed, not whether it had been assessed at all. Since the condition of the bond was the payment of the assessment, it made no difference, even if the order of the bankruptcy court had created a good estoppel against the plaintiff. It seems, indeed, a harsh rule that the government should collect a tax which its courts have already decided not to be due,

yet this is exactly the consequence of section 3224 of the Revised Statutes. U. S. Code, title 26, § 154 (26 USCA § 154); Graham v. Du Pont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965; Ellay Co. v. Bowers, 25 F.(2d) 637 (C. C. A. 2). The unimpeded collection of a nation's taxes is a condition of its life, and it must serve as a redress to such citizens as are wronged that they have recourse to its courts after payment.

Nor did it make a difference that the plaintiff and the United States refused to prove the claim against the trustee in bankruptcy. Bank v. Sawyer, 177 Mass. 490, 59 N. E. 76, 83 Am. St. Rep. 292 (semble). We need not consider upon what conditions a surety may secure the aid of a court of equity to compel the obligee to proceed against the principal; equity does not do so, when the obligee's delay will not prejudice the surety's rights against the principal. No such injury was possible here. Section 57 of the Bankruptcy Act (11 USCA § 93) gave to the defendant full protection, of which it availed itself with the active assistance of the plaintiff, so far as lay in his power.

The most difficult question in our view is whether the plaintiff could sue upon the bond. In the case of parol contracts the rule seems to be well settled, since Bowen v. Morris, 2 Taunt. 374, that, when a public officer is the promisee, suit must be brought in the name of his principal. Bainbridge v. Downie, 6 Mass. 253 (a written contract); Irish v. Webster, 5 Greenl. (Me.) 171 (a note); Babcombe v. Northrup, 9 Minn. 172 (Gil. 159), a note; United States v. Gordin (D. C.) 287 F. 565, 570. So far as we can find the doctrine has never been extended to specialties, and in the absence of some enabling statute the obligee named in a bond must sue upon it. Equitable Surety Co. v. Board of Commissioners, 256 F. 773, 775 (C. C. A. 5); Ayres v. Toland, 7 Har. & J. (Md.) 3; Wilson v. Donnelly, 19 R. I. 113, 31 A. 966; People v. Laidlaw, 120 Mich. 358, 79 N. W. 576; Farmington v. Hobert, 74 Me. 416; Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550; Owens v. Ga. L. Ins. Co., 165 Ky. 507, 177 S. W. 294. Moreover, this rule has been extended to prevent suit by the successors in office of the obligee, though they are named as such in the bond (Sumner v. Steward, 2 N. H. 39 [semble]; Stevens v. Hay, 6 Cush. [Mass.] 229; McDowell v. Hemphill, 60 N. C. 96), and such is no doubt the common law. On the other hand, in Tyler v. Hand, 7 How. 573, 595, 12 L. Ed. 824, President Tyler was allowed to sue upon bonds given to President Van Buren and his successors

on behalf of orphan Indians, and the decision has never since that time been questioned, except in Stevens v. Hay, 6 Cush. (Mass.) 229. The case arose on demurrer to a declaration upon which the defendant assigned five several grounds. The court, observing that the defects assigned were not to the form, but to the substance, of the declaration, nevertheless considered them severally. The second ground was that the plaintiff showed no title to the bonds, or any interest which would authorize him to sue, and its disposition was summary and without discussion. Yet, while it is not clear just what the ground of the decision was, the defect appeared on the face of the declaration and was certainly ground for demurrer, if valid, so that we must conclude that the court meant to declare a new rule in such instances, which we feel not only authorized, but bound, to accept.

The situation is an instance of the unwillingness or incapacity of the common law to recognize an office as a legal person, and even the classic exception, a corporation sole, has been criticized on historical grounds by Mr. F. W. Maitland with great acumen and scholarship. Yet, whatever the source, and however alien in its origin, nobody can question that fictional personality got a place in our law, though the tendency to-day be against it. Of the convenience of recognizing an office as a legal person in cases like that at bar there can be no question; the purpose of such bonds is to create an obligation in favor of the incumbents, as they succeed each other; and the existence of many statutes which permit what the common law denied are evidence of its need. A similar situation arises upon the abatement of an action brought by a public officer, who dies or retires pendente lite, and the common-law rule was followed in U. S. v. Boutwell, 17 Wall. 604, 21 L. Ed. 721, U. S. v. Chandler, 122 U. S. 643, 30 L. Ed. 1244, Warner Valley Stock Co. v. Smith, 165 U. S. 28, 17 S. Ct. 225, 41 L. Ed. 621, and U. S. ex rel. Bernardin v. Butterworth, 169 U. S. 600, 18 S. Ct. 441, 42 L. Ed. 873. The Act of February 8, 1899 (U. S. Code, title 28, § 780 [28 USCA § 780]), was passed to relieve the difficulty so created, and answered so far as federal officials were concerned (Caledonian Coal Co. v. Baker, 196 U. S. 432, 25 S. Ct. 375, 49 L. Ed. 540), though it did not cover the substitution of state officials (Pullman Co. v. Croom, 231 U. S. 571, 34 S. Ct. 182, 58 L. Ed. 375), unless the state statutes gave the power (Gorham Mfg. Co. v. Wendell, 261 U. S. 1, 43 S. Ct. 313, 67 L. Ed. 505).

These were all, indeed, cases where the

substitution sought was of parties defendant, and there is a difference in the case of parties plaintiff, since in the first case the wrongful act laid is not that of the substituted defendant, while the right sued upon generally in fact devolves upon the successor, virtute officii. Unless we hold that Tyler v. Hand covers the case, we are forced to a curiously anomalous conclusion. Had Edwards sued the bond pending his term of office, the plaintiff could have been substituted upon his retirement; yet Edwards must sue to the use of the plaintiff, because he retired before the writ issued, and in such an action the plaintiff may not be substituted. All things are indeed possible, and perhaps we should tenaciously cling to the letter; but it seems to us that, after Congress has declared its policy broadly, we are warranted in assuming that Tyler v. Hand covers what might otherwise have been regarded as casus omissus.

The judgment is reversed, and, since the case was tried upon stipulated facts, the cause is remanded, with instructions to direct judgment for the plaintiff.