### UNITED STATES RUBBER CO. v. QUERY et al.

District Court, E. D. South Carolina.
April 9, 1937.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

A. L. Wardlaw, of Columbia, S. C., and H. P. Sadtler, Jr., of New York City (A. L. Wardlaw, of Columbia, S. C., H. P. Sadtler, of New York City, Elliott, Mc-Lain, Wardlaw & Elliott, of Columbia, S. C., and Arthur, Dry & Dole, of New York City, on the brief), for plaintiff.

John M. Daniel, Atty. Gen., and Claude K. Wingate, Gen. Counsel South Carolina Tax Commission, of Columbia, S. C., for defendants.

PARKER, Circuit Judge.

This is a suit by the United States Rubber Company, a New Jersey corporation having its principal office in New York City, against Walter G. Query and other members of the South Carolina Tax Commission and E. P. Miller, State Treasurer of South Carolina, to enjoin them from collecting or attempting to collect from plaintiff an assessment of corporation franchise taxes for the years 1935 and

1936, amounting with penalties to $23,142.-97. Plaintiff resists payment of the taxes assessed on the ground that it is not doing business in the state of South Carolina and also on the ground that the statutes imposing the taxes are in conflict with the Fourteenth Amendment to the Constitution of the United States in discriminating between domestic and foreign corporations. Interlocutory injunction having been applied for, a court has been constituted pursuant to section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380), consisting of three judges, before whom a final hearing has been had and the cause submitted for final decree. It is admitted that, if the tax has been wrongly assessed against plaintiff, there is no adequate remedy at law and that consequently there is jurisdiction in equity to entertain the suit. In the view which we take of the case, it will be necessary for us to consider only one of the grounds upon which plaintiff asks relief, i. e., whether it had ceased to do business in the state of South Carolina prior to the years for which the franchise taxes were imposed and was therefore no longer liable for such taxes.

Plaintiff, as stated, is a New Jersey corporation with its principal office in the city of New York. Prior to September, 1934, it was engaged in the manufacture and sale of rubber goods, both directly and through subsidiary corporations, of which there were at that time more than one hundred; and it was accustomed to file a consolidated income tax return for itself and these subsidiaries. In 1934 the law permitting such consolidated returns was changed and a consolidation of the business of plaintiff was thereupon carried through so as to obviate the necessity of filing separate returns and the loss which these would involve. This consolidation was effected by transferring to one of plaintiff's subsidiaries, the United States Rubber Products, Inc., a Delaware corporation, all of the manufacturing and selling business of plaintiff and its other subsidiaries, leaving plaintiff as a mere holding company, owning manufacturing plants at various parts of the United States which it leased to United States Rubber Products, Inc. Among the properties so leased was a manufacturing plant and village in Fairfield county, S. C., near the town of Winnsboro.

The Fairfield county property of plaintiff was leased, together with its other property, to the Rubber Products Company, under an instrument by the terms of which that company agreed to pay to the plaintiff in monthly installments an amount equal to 6 per cent. per annum on the net book value of the property leased, plus depreciation. The lease contained various provisions as to payment of taxes, insurance, etc., with provision for forfeiture for breach of its conditions. Its purpose is thus stated in the forty-third paragraph, viz.:

"43. It is the purpose of this agreement to provide for the Products Company the properties, facilities, rights and privileges necessary to enable it to carry on, in the United States of America, its territories and possessions, for its own account and its own expense, the manufacturing and selling business previously carried on by the Rubber Company and its various subsidiaries above-named, excepting the selling operations heretofore carried on by Mishawaka Rubber & Woolen Manufacturing Company, Mechanical Fabric Company, New York Belting and Packing Co., a New York corporation, and Mechanical Rubber Co., a New Jersey corporation. The Rubber Company agrees to do all further acts and execute all further documents and give all further assurance necessary or proper to afford the Products Company the full benefits intended by this agreement."

Plaintiff owned all of the stock of the Rubber Products Company except a few qualifying shares held by the directors; and, upon the transfer, this stock was increased to $15,000,000. The assets vested in the Rubber Products Company were valued at $36,000,000, of which $15,000,000 was represented by capital stock, $15,000,000 by paid-in surplus, and $6,000,000 by an account set up on the books of both corporations as owing by the Rubber Products Company to plaintiff. This open account has fluctuated from time to time, the lowest figure being $240,000 and the highest $6,900,000. As dividends have been declared by the Rubber Products Company, they have been credited to plaintiff on its books. Interest at the rate of 5 per cent. per annum on the monthly balances due on this account is provided for by the lease and has been paid by the Rubber Products Company to plaintiff.

Through stock ownership, interlocking directorates and identity of controlling officers, plaintiff controls the Rubber Prod-

ucts Company. The two corporations occupy the same offices in New York City; but each maintains its separate corporate identity, the persons who are officers performing for each corporation the duties pertaining to their offices in that corporation, and transactions between the two corporations being accurately recorded in their corporate books and records. The Rubber Products Company does not borrow from plaintiff, and is prohibited by the lease from borrowing from others on pledge or mortgage of its assets. It finances its operations by sale of merchandise and discount of commercial paper, maintaining large current accounts for the purchase of raw materials necessary to its business.

Since September 1, 1934, the plaintiff has not operated its property in South Carolina, or engaged in any other business in that state, unless the operations carried on in the name of the Rubber Products Company at the Fairfield county plant should be held to be business done by the plaintiff. Plaintiff has been assessed and has paid property taxes on its South Carolina property leased to the Rubber Products Company, but has not paid any franchise tax for the years in question for the privilege of doing business in the state. The Rubber Products Company, as a foreign corporation doing business in the state, has paid a franchise tax based on the property which it owns within the state, as well as the ordinary property taxes assessed against such property.

The South Carolina statutes under which the defendants have assessed the franchise taxes in question against the plaintiff are Civil Code of South Carolina of 1932, sections 2682 and 2690-A, and. Act May 31, 1933, No. 406, § 9, of the Acts of the General Assembly of South Carolina for the year 1933 (38 St. at Large, p. 574). These statutes impose a total franchise tax of 3 mills upon each dollar of the paid-in capital stock of domestic corporations and a tax in like amount upon foreign corporations "doing business in this State," upon "each dollar of the true value of the prop-. erty of such corporation used within this State in the conduct of its business." The first question for our decision, therefore, is whether plaintiff has been engaged in business in the state of South Carolina since its lease to the Rubber Products Company. The question, it will be observed, is not whether plaintiff is engaged in business in the state of New York, where its office is and its various transactions with the Rubber Products Company are had, but whether it is doing business in the state of South Carolina so as to render itself liable for the franchise tax imposed by the statutes of that state. We think it clear that this question must be answered in the negative.

The franchise tax is a privilege tax imposed upon the privilege of doing business as a corporation within the state. The power of the state to levy such a tax upon a corporation, like the power of the state to authorize service of process upon it, is dependent upon the presence of the corporation within the state. And, as said in one of the cases involving service of process, "The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like 'qui facit per alium facit per se.' It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established." Bank of America v. Whitney-Central Nat. Bank, 261 U.S. 171, 173, 43 S.Ct. 311, 312, 67 L.Ed. 594. The mere ownership of property in the state does not constitute such presence. New Mexico ex rel. v. Baker, 196 U.S. 432, 25 S.Ct. 375, 49 L.Ed. 540; National Regulator Co. v. Abco Boiler Corporation (D.C.) 42 F.(2d) 712; 12 R.C.L. 72. Nor does the ownership of the stock of a controlled subsidiary which is doing business in the state as a separate legal entity subject the corporation which exercises the control to the jurisdiction. Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Peterson v. Chicago, R. I. & P. Ry. Co., 205 U.S. 364, 392, 27 S.Ct. 513, 51 L. Ed. 841; Conley v. Mathieson Alkali Works, 190 U.S. 406, 409-411, 23 S.Ct. 728, 729, 47 L.Ed. 1113; Wilhelm v. Consolidated Oil Corporation (C.C.A.10th) 84· F. (2d) 739; La Varre v. International Paper Co. (D.C.) 37 F.(2d) 141, 145; 14A C.J. 1291-1292; 12 R.C.L. 79; note, 75 A.L.R. 1242. In the case of Conley v. Mathieson Alkali Works, supra, the Supreme Court approved the following holding of the special master, viz.:

"Upon the facts thus outlined, it does not appear that the defendant corporation was, at the time of the service of the sum-

mons herein, viz., April 18, 1901, doing business within this state. The fact that it held the entire capital stock of the Castner Electrolytic Alkali Company, and that the operations of that company were carried on under the same management as before December 31, 1900, is not material. The new corporation was a separate legal entity, and, whatever may have been the motives leading to its creation, it can only be regarded as such for the purposes of legal proceedings. It was that corporation alone which transacted any business in this state, notwithstanding it may have been for all practical purposes merely the instrument of the defendant corporation. People v. American Bell Telephone Co., 117 N.Y. 241, 22 N.E. 1057; United States v. American Bell Telephone Co. (C.C.) 29 F. 17."

Defendants rely particularly upon the cases of Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678, and International Salt Co. v. Phillips (D.C.) 3 F.(2d) 678; Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323. One of these cases, however, had to do with a federal corporation excise tax, and the other with a federal capital stock tax, and the question involved in both cases was, not whether the corporations were engaged in business within a particular territory, but whether they were engaged in business at all. It may very well be, although we do not decide the point, that plaintiff here was engaged in business within the meaning of the taxing acts involved in those cases and that it was engaged in transacting business to such an extent at its office in New York as to render it subject to franchise tax in that state; but the question which we have to decide is neither of these, but whether it was doing business in the state of South Carolina. We see nothing upon which to base an affirmative answer to that question, except the ownership of property in South Carolina which it had leased to its subsidiary and the control of that subsidiary through stock ownership; and neither of these, as we have seen, is sufficient to constitute the doing of business within the state. Under cases applying the federal taxing acts above referred to, it is held that they are not sufficient to establish the doing of business anywhere within the meaning of such acts. Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; McCoach, Collector, v. Minehill & Schuylkill Haven R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Lane Timber Co. v. Hynson (C.C.A.5th) 4 F.(2d) 666, 40 A.L.R. 1448; Rose, Collector, v. Nunnally Inv. Co. (C.C.A.5th) 22 F.(2d) 102; United States v. Nipissing Mines Co. (C.C.A.2d) 206 F. 431.

A well-considered case involving the question as to what is doing business in a state within the meaning of a state statute imposing a franchise tax on a foreign corporation is People v. Knapp, 229 N.Y. 502, 128 N.E. 892, 894. In that case the Court of Appeals of New York laid down, correctly we think, the criteria by which the doing of business within a state within the meaning of such statute should be judged, saying:

"The relator was not doing business in this state within the legislative and statutory intendment. The condition of doing business in this state, within that intendment, implies that the foreign corporation is accomplishing acts and activities within the state which the state might reasonably and with ordinary interstate comity interdict or prevent, and the doing of which was a privilege which required governmental consent, supervision, and control, and which necessitated or sought governmental opportunity and protection to be compensated or balanced by contributions, through taxation, to the burden of government. * * * The license fee is the charge made upon and for the granting of the privilege of doing business in this state with the protection of our laws and the financial and other advantages of a situation here. The franchise tax is the charge upon the privilege granted when and as exercised."

Certainly the plaintiff here is doing nothing in South Carolina which that state might reasonably and with ordinary interstate comity interdict or prevent, or the doing of which is a privilege requiring governmental consent, supervision, or control. These can be predicated neither of the mere holding of property which has been leased to another nor of the ownership of stock in the corporation which has leased that property. The question whether the state might impose a franchise tax upon a foreign corporation for the mere privilege of owning property within the

state does not arise here, as the statutes of South Carolina do not impose the tax upon such privilege but upon the doing of business within the state.

Defendants contend that we should disregard the separate corporate entity of the Rubber Products Company and hold that it is the plaintiff which is really engaged in the business carried on by that corporation; but we see no basis upon which the facts of the case can be thus disregarded. It is the Rubber Products Company, a corporation separate and distinct from plaintiff, which is carrying on business in South Carolina; and the mere fact that plaintiff owns the stock in that corporation and that the two have to a large extent the same officers and directors is no reason for disregarding the corporate entity of either. Cleveland Trust Co. v. Consolidated Gas, E. L. & P. Co. (C.C.A.4th) 55 F.(2d) 211, 215. We know of no principle upon which one can be held for taxes on account of the business carried on by the other. On the contrary, the general rule is well settled that "a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348; Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S. Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679; Dalton v. Bowers, 287 U.S. 404, 410, 53 S. Ct. 205, 206, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397; Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 418-420, 53 S.Ct. 198, 199, 77 L.Ed. 399.

As pointed out in the case of New Colonial Ice Co. v. Helvering, supra, the rule just stated is subject to the qualification "that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." But no such exceptional situation is presented here. The officers of the Rubber Products Company in carrying on, in ordinary course, the business of that company must be presumed to be acting for it and not for the plaintiff although they are also officers of the latter corporation. And there is nothing either in the fact that the Rubber Products Company is indebted to plaintiff on an open running account, or that it is forbidden by its contract with plaintiff to pledge or mortgage its assets, which would justify us in ignoring the separate corporate identities of the two corporations. On the contrary, the fact that the account between the two is carefully kept, tends to show that their separate corporate identities are preserved and that their transactions are not merged and treated as one business. The limitation on pledge and mortgage of assets seems to have been required by the indenture executed by plaintiff for the security of its bondholders; and, at all events, it cannot be said to result in such unfettered dominion over the affairs of the Rubber Products Company as would justify the conclusion that its business is the business of plaintiff and that the separate corporate identities of the two corporations is a mere sham or pretense.

Having reached the conclusion that plaintiff under the statutes of South Carolina is not subject to the franchise tax, it is not necessary to consider the constitutionality of those statutes when tested by the due process and equal protection clauses of the Fourteenth Amendment. The collection of the taxes complained of must be enjoined because not warranted by the statute law of the state. The suit must be dismissed as to the State Treasurer, however, as he has no connection with the controversy, since Act April 1, 1932, No. 804 of the Acts of 1932 (37 St. at Large, p. 1392) provides that corporation license fees and taxes shall be payable to the South Carolina Tax Commission instead of to the State Treasurer.

Decree will be entered, therefore, enjoining the members of the tax commission from collecting or attempting to collect from plaintiff the franchise taxes in question and dismissing the suit as against E. P. Miller, State Treasurer.

Decree accordingly.