## ARMOUR et al. v. ROBERTS, Internal Revenue Collector.

### (Circuit Court, W. D. Missouri, W. D.   March 9, 1907.)

### No. 2,904.

1. INTERNAL REVENUE—RECOVERY OF TAX PAID—ACTION—PARTIES—JOINDER—INTEREST.

Rev. St. Mo. 1899, § 542 [Ann. St. 1906, pp. 581, 583, 745], provides that all parties having an interest in the object of an action may be joined as plaintiff.  Section 544 declares that both as to actions at law and in equity parties united in interest must join, and if one refuses he may be made a defendant; and section 767 provides that judgment may be given for or against any one or more plaintiffs or defendants, and the judgment will determine the respective rights of the parties.  *Held* that, where an internal revenue tax was wrongfully assessed against three cestuis que trust under a will and was jointly paid under protest by the trustees, such trustees and beneficiaries were entitled to join in a single suit against the internal revenue collector to recover the same.

2. SAME—NATURE OF OBLIGATION.

Where an internal revenue tax was erroneously assessed and collected by the government on an inheritance and was paid by the trustees under protest, the collection thereof by the internal revenue officers did not constitute a tort on the part of the government, which was under a quasi contractual obligation to repay the amount so collected under Const. Amend. 5, providing that private property should not be taken for public use without just compensation.

3. SAME—PERSONS LIABLE.

Act Cong. June 13, 1898, imposing an internal revenue tax on certain legacies, required the executor to sign a statement to the collector and to pay the tax to him, and section 30 gave the Commissioner of Internal Revenue control of the assessment.  Rev. St. §§ 3182, 3183 [U. S. Comp. St. 1901, pp. 2071, 2072], required the collector to pay the tax into the treasury, and declared that on the death of the collector all lists should be transferred to his successor; and Act Cong. Feb. 8, 1899 [U. S. Comp. St. 1901, p. 697], declared that an action against such collector should not abate by his death, but his successor should be substituted as defendant.  *Held* that, where the collector wrongfully received an inheritance tax on bequests which were not taxable, on his death the liability to refund was enforceable against his successor in office, it being the duty of the Commissioner to pay any judgment rendered against the collector as provided by Rev. St. § 3220 [U. S. Comp. St. 1901, p. 2086].

Frank Hagerman, for plaintiffs.

A. S. Van Valkenburgh, U. S. Atty., and L. J. Lyon, Asst. U. S. Atty., for defendant.

McPHERSON, District Judge.   This case is pending on a demurrer of the defendant to plaintiffs' amended petition.

The amended petition recites that September 27, 1901, Kirkland B.

Armour, a resident citizen of Kansas City, Mo., died, leaving surviving him his widow, Annie H. Armour, and his three children, Andrew Watson Armour, born April 3, 1882, Lawrence H. Armour, born March 8, 1888, and Mary Augusta Armour, born October 4, 1893. Kirkland B. Armour left a will naming the plaintiffs, Charles W. Armour and Annie H. Armour, as executor and executrix of his estate, by which will he devised the homestead and the contents thereof to his widow, and all the balance of his estate he left in equal proportions to his widow and said three minor children, the interests of said minor children to be held during their minority by the said Charles W. Armour and Annie H. Armour as trustees, with full power to invest, reinvest, exchange, sell, and dispose of the property vested in them as they should see fit, and providing that there be no right of possession or enjoyment in said minor children during their minority, and providing that the interests going to said children were not capable of being immediately possessed or enjoyed by them. October 18, 1901, said Charles W. Armour and Annie H. Armour were, by the probate court at Kansas City, duly appointed and qualified as executor and executrix of said estate, which they did upon proper notices and proceedings, and the said estate was finally closed, and their accounts as executor and executrix finally settled by order of the said probate court February —, 1904, and they were discharged, and the said estate was ordered to be delivered to the said trustees. But the claim and cause of action herein was never in any way divided or split up, but the same, with other personal property held by the said trustees and Andrew Watson Armour, was held without any division between them or between any of the parties. Prior to September 25, 1902, and until the ———— day of May, 1904, when he died, one Frank D. Roberts was United States collector of internal revenue in the district of which Kansas City, Mo., is and was a part. June 1, 1904, the defendant herein was appointed and qualified as his successor, and he ever since has been and still is such collector for said district. September 25, 1902, the said executor and executrix of said estate, at the demand of the said Frank D. Roberts, as collector, made a return to him of said estate and of the legacies therein, upon the forms prepared by and under the direction and authority of the Commissioner of Internal Revenue, and the United States, by the said Internal Revenue Commissioner, made a pretended levy and assessment, under the law regulating the taxation of legacies and inheritances, against the said estate and the legacies passing therefrom. Said levy and assessment made the said tax aggregate $51,751.59, which amount the said collector demanded of the said executor and executrix, and threatened to enforce the payment thereof with penalties, by reason of which, September 26, 1902, the said executor and executrix, out of the general funds of the estate and in a lump sum, paid to the said collector under protest, and with notice that the said tax was illegal, and that steps would be taken to have the same refunded and recovered. The assessment of legacies and distributive shares arising from personal property of every kind of said estate, in charge of said executor and executrix, aggregated $3,680,113.56, of which amount one-fourth was found to be exempt, because under the will such was the amount that would be taken by the widow. The

amount of the legacies of the said legatees, their relationship to the deceased, the amount levied and claimed to be subject to taxation, the rate of taxation, and the amount then and there demanded by the United States and paid as aforesaid to Frank D. Roberts as collector, is set out in the schedule, assessment, and levy, which were in these words:

"United States Internal Revenue.

"Legacies and Distributive Shares.

"Sections 29 and 30, Act of June 13, 1898, as Amended by Sections 10 and 11 of an Act Approved March 2, 1901.

"Schedule of legacies or distributive shares arising from personal property of any kind whatsoever, being in charge or trust of Charles W. Armour and Annie H. Armour, as executor and executrix, said property passing from Kirkland B. Armour of the city of Kansas City, county of Jackson, and state of Missouri, who deceased upon the 27th day of September, 1901, to the persons hereinafter mentioned, by will or by the intestate laws of Missouri; also the amount of such property, together with the amount of duty or tax which has accrued or should accrue thereon agreeably to the provisions of the internal revenue laws of the United States:

Appraised value of personal estate...................... $ 3,880,119 53
Total amount legal debts and expenses to which the personal property is liable............................     200,005 97
                                                          ─────────────
Balance, clear value of personal estate............ $ 3,680,113 56

| Names of Persons Entitled to Beneficiary Interest in Said Property. | Age. | Relationship of Beneficiary to Person Who Died Possessed. | Clear Value of Legacy. | Legacies Exempt. | Amount Taxable. | Rate for Every $100. | Amount of Tax. |
|---|---|---|---|---|---|---|---|
| 1 Annie H. Armour | | Widow | $920,028.39 | $920,028.39 | | | |
| 2 Andrew Watson Armour | 20 | Son | 920,028.39 | | $920,028.39 | $1.87½ | $17,250.53 |
| 3 Lawrence H. Armour | 14 | Son | 920,028.39 | | 920,028.39 | 1.87½ | 17,250.53 |
| 4 Mary Augusta Armour | 8 | Daughter | 920,028.39 | | 920,028.39 | 1.87½ | 17,250.53 |
| Total.................... Total exemption......... Amount taxable......... Total tax................ | | | $3,680,113.56 | $920,028.39 | $2,760,085.17 | | $51,751.59 |

November 18, 1902, said executor and executrix in writing, under oath, and upon a form prepared by the Internal Revenue Commissioner for such cases, appealed to said Commissioner, and made application to him to have said sum of $51,751.59 so paid refunded, stating in detail and in form satisfactory to the Commissioner the claim of illegality, but the said appeal was by the said Commissioner denied, and he,

after a hearing, refused to refund the said sum and tax paid, or any part thereof. The claim of the United States was wholly illegal, and the assessment and levy made were void, and the collection of said taxes wholly unauthorized by law. None of the legacies so taxed had vested when the tax was levied or collected, none of them capable of being immediately possessed or enjoyed, and none of them could, under the terms of the will, vest until the legatee reached majority. Each and every act of the collector herein mentioned was done under the direction of the Commissioner of Internal Revenue and proper officers of the United States. Plaintiffs pray judgment for the sum of ·$51,751.59, with interest at the rate of 6 per cent. per annum from September 25, 1898, and for costs. Such is the amended petition.

The defendant has demurred thereto, on the grounds: (1) There is a misjoinder of parties plaintiff. (2) Several causes of action have been improperly united. (3) Facts sufficient to constitute a cause of action are not stated. (4) There is no cause of action stated against the defendant, Charles W. Roberts, collector.

First, as to the objection of misjoinder of parties plaintiff, and of causes of action. If allowable, and if this case were by a bill in equity, the objection of multifariousness would not avail defendant. The pivotal question in the case is, as to whether the action can be maintained against the defendant to recover back the moneys thus paid. That question is common to all the plaintiffs, and no additional expense would be incurred by the defendant whether the action was brought by one or all the plaintiffs, and the evidence would be the same. But this is an action at law, and defendant contends that there is a misjoinder. The purpose in adopting a code of practice was to, in large part, make the principles of equity practice controlling in actions at law. The technicalities of the common law could be learned, but too often by no two men concerned in a case, at the bar or on the bench, alike. Needless expense, parties wrongly thrown out of court, multiplicity of suits, and delays were supposedly made matters of history when the Codes were enacted. So that if the parties have a common interest, although differing in value, they can all join. And if one refuses to join he can be made a defendant, and one adjudication puts all the questions at rest. And the objection so often stated, that complications will arise in taking a verdict of a jury, is an objection of no force. Under most of the Codes the court upon request must take special findings, and in this court special findings may be taken. The trouble is wholly imaginary. That the former equitable principles are brought forward into the Codes, one need but read both the text and cases cited in Bliss on Code Pleading. §§ 25, 72–76. State v. Thornton, 56 Mo. 325; Walker v. Deaver, 79 Mo. 664; Insurance Co. v. Gilman, 112 Ind. 7, 13 N. E. 118; Winne v. Insurance Co., 91 N. Y. 185; Trompen v. Yates, 92 N. W. 647, 66 Neb. 525; Schiffer v. Eau Claire, 51 Wis. 385, 8 N. W. 253; Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847; Phinny v. Warren, 52 Iowa, 332, 1 N. W. 522, 3 N. W. 157, under a Code like that in Missouri. I need not multiply cases. They are numerous, and particularly so in the Missouri Reports, construing the Missouri Code as to joinder of parties and actions. And this could not be otherwise, as will be seen from reading sections 544 and 542, Rev. St. Mo.

151 F.—54

1899 [Ann. St. 1906, pp. 581, 583, 745]. A literal and technical reading of those statutes give the right to join the parties as is here done. But still stronger does this appear when a liberal construction is given the statutes, and that is the construction called for by the authorities. Section 542 provides that all parties having an interest in the object of the action may be joined as plaintiffs. Section 767 provides that judgment may be given for or against any one or more plaintiffs or defendants, and the judgment will determine the respective rights of the parties. Section 544 provides, both as to action at law and equity, that parties united in interest must join, and if one refuses he may be made a defendant. So I conclude that on the question of pleading the contention of the defendant is without merit, unless the action of the collector were at least two separate torts. And that suggestion involves the determination of the case on its merits.

Oftentimes it is difficult to determine whether a case is in contract or sounds in tort. The question under our "fact pleading" seldom arises, except as to the measure of damages, or the statute of limitations. But in actions against the United States it is jurisdictional. In the case at bar, it is not claimed that there was an express contract, and the defendant claims the acts of the collector were a tort. The United States attorney and his assistant, in argument at the bar, conceded that the government now has the large sum of money morally, and perhaps legally, belonging to plaintiffs, and, while not saying in language, the answer to the plaintiffs was, in effect and meaning, there is no way to reimburse the plaintiffs. The honor and integrity and fair dealing of our government ought to be, and is, on the same high plane that exists between citizens of high character, and the powerful should not take from the weak without compensation. And the spirit of fair dealing of our government can only be preserved by and through its agencies, one of which is the courts. So that it follows, as will be conceded by every person, that the government should make restitution of this money, and, if the power to do so is not with some officer, it should be adjudged by this court, if it has the jurisdiction to do so.

Whether the act of the collector was a tort, or an implied contract to refund by his superior, must be determined from a very few facts. The government, as per statutes, has the right to tax. The statute in question was open to two supposed constructions. The Commissioner of Internal Revenue adopted that construction in favor of the government. In doing so, he acted in good faith, and with the best of motives. He believed he was within the law, and, so believing, exacted the return and the payment. But it turned out that he was mistaken in his interpretation of the statutes, as was held by the Supreme Court in the case of Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563, denying the contention of the government and its law officers, and reversing the Circuit Court. So that whether, in the case at bar, the collector did a wrong amounting to a tort when he made the collection, must be decided. If it were a wrong, it can only be avoided by doing another wrong, viz., refuse to abide by a recent decision of its highest court, concurred in by all the Justices. To establish one wrong, another wrong must be done. The fifth amendment to the Constitution provides: "Nor shall private property be

taken for public use without just compensation." Now, suppose the government in time of peace takes property, knowing it to belong to an individual, and refuses payment therefor, denying that it will ever make restitution, and denying any compensation. Is that a wrong as grievous as taking by the taxing power? In time of peace, the officers take by force his block of ground for an United States court building. And the officers override all protests of the owner. The owner cannot have the writ of injunction. He cannot interfere for fear of an indictment. He allows it because he can do nothing else; but he makes protest. The officers would be doing an illegal act; but is it a tort? Or is there not an implied contract to make restitution or payment? On a similar state of facts the Supreme Court held there was an implied contract that the government would make payment. United States v. Lynah, 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539. In that case there were two questions presented for decision. The one was whether the case was on contract, or one in tort, and it was held to be an implied contract to pay the party wronged. The other question was as to whether it was a taking of property within the meaning of the Constitution. There was no claim that the government had actually and physically taken any of plaintiff's property. But the government, exercising its functions by its officers, had damaged plaintiff's property by lessening its value and impairing its use. And this was held to be a taking. I can add nothing by discussing that case. But the logic of Justice Brewer, and the cases cited, make it, in my opinion, decisive that in the case at bar we have a case of an implied contract, and not one in tort. In that case, the government did not claim title, either legal or equitable, to the property so "taken." But it claimed the right to back water over the land, and destroy it, and thereby take it. In the case at bar, the government insisted on the right to the tax, and thereby to lessen the estate, and to take the tax for public use. In the case cited, the owner could not by injunction proceedings, nor by proceedings to abate the nuisance, have the property restored. At all events, such proceedings would be doubtful. In the case at bar, the Armours could not personally interfere without being subject to indictment, and they were expressly denied the writs of injunction. Rev. St. § 3224 [U. S. Comp. St. 1901, p. 2088]. In neither the case cited, nor in the one at bar, was a wrong intended by government officers. In the case cited, the officer in charge insisted upon his right to take, because of what was believed to be by him a proper interpretation of the Constitution. But he adopted a mistaken interpretation. In the case at bar, we have precisely the same situation, except it was a statute for interpretation, and a like mistaken conclusion was adopted. In the case cited, the Constitution required just compensation to be made. That should have been arrived at in advance of taking the property, either by agreement, or by proceedings in a court, as was done in Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449. In the case at bar, the methods are fixed by statute—first a review by administrative officers, and then by the courts. But let it be kept in mind, with the thought all the time, that collectors might wrongly or mistakenly collect money, and the courts would require a refund. Such is the statute under which the collec-

tion was made and revised. Rev. St. §§ 321, 3182, 3183, 3220, 3226, 3227 [U. S. Comp. St. 1901, pp. 186, 2071, 2072, 2086, 2088, 2089]. It is true that in the case cited the allegation was made that the acts of the government were rightly done, while in the case at bar the allegations are that the claim of the government was wholly illegal, and the assessment and levy were void, and the collection unauthorized. But in neither case had the government the right in a sense to do what was done, and the two cases seem to be alike. The allegations in the petition demurred to are but legal conclusions, and the facts pleaded control. In the case cited, there was a physical invasion of plaintiff's land without his consent, a strong argument that there was a tort by trespass. But in the case at bar, the collector in effect said this estate was taxable. The executor said it was not. The collector said he would collect the tax. The executor said, "I am helpless, and therefore shall expect to sue and recover it back," and preliminary to that filed a protest. And under those facts the collector took the money. I am of the opinion that here is a stronger case than the Lynah Case, and that it is a case of a suit on an implied contract. It being such a case, there is not a misjoinder of plaintiffs, nor of causes of action.

The remaining question is as to whether, on the facts of the case, the defendant herein, the present collector, is properly made a defendant. On this question the entire argument, both orally and in writing, of defendant's counsel, has been on the assumption that this is an action in tort. And I agree with them that if that be so, then this case is at an end. But having already ruled that this is an action on an implied contract, I shall pass on the question now under consideration, with the holding that it is a case of contract, not a tort. There was an implied agreement to refund, when determined that the tax was not owing. The collection by the collector was an act within and pertaining to his official duties. Therefore the responsibility results from the office. Such being the case, the collector then in office was not personally liable, but, had he survived and remained in office, would have been adjudged liable as an officer, with a certificate, as per statute, withholding execution. And if this be so, then why is not the successor in office likewise, neither more nor less, liable to a judgment or order? The tax should not have been exacted. But in taking it, the collector was not himself liable. Thus in Jones v. LeTombe, 3 Dall. 384, 1 L. Ed. 647, the action was on a bill of exchange given by a consul of France. Held not personally liable. In Hodgson v. Dexter, 1 Cranch, 345, 2 L. Ed. 130, the Secretary of War was sought to be held personally liable on a lease taken for property used by the government. It was held that there was no personal liability, chief Justice Marshall saying:

"The court is unanimously and clearly of the opinion that this contract was entered into entirely on behalf of government, by a person properly authorized to make it, and that its obligation is on the government only."

In Garland v. Davis, 4 How. 131, 148, 11 L. Ed. 907, a like holding was made in an action against the clerk of the House of Representatives. And see Harding v. Woodcock, 137 U. S. 43, 11 Sup. Ct. 6, 34 L. Ed. 580.

The collector acted as was believed his official duties required. Personally he was not in the wrong. Under section 3224 of the Revised

Statutes he could not be enjoined. But a suit to recover the money back when illegally collected is a part of the system of corrective justice, as was held in Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901, and Auffmordt v. Hedden, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674.

By section 29 of the statute under which the money was collected (June 13, 1898), the executor was required to sign a statement to the collector, under forms prescribed, and then pay to the collector the tax. But the Commissioner made or had charge of the so-called "assessment," as appears from section 30 of such statutes. Also, see sections 3182, 3183, Rev. St. [U. S. Comp. St. 1901, pp. 2071, 2072], all of which are in force as to the statute in question, and it is the Commissioner who makes the assessment so far as one is made, and the collector, as the title of his office implies, only collects. In the event of the death of a collector, all lists shall be transferred to his successor; and by the statute of February 8, 1899, an action against said officer shall not abate, but his successor shall be substituted as defendant (Act Feb. 8, 1899, c. 121, 30 Stat. 822 [U. S. Comp. St. 1901, p. 697]). Taxes collected must be duly paid into the treasury.

By Rev. St. § 3220, it is made the duty of the Commissioner to pay any judgment rendered against a collector for internal revenue taxes. And by section 30 of the act of June 13, 1898, all provisions as to other taxes are made applicable to that statute. So that we have a case, where the collector has no personal interest, has no discretion but to act, must remit all moneys collected to the treasury, and for excessive collections made under direction of the Commissioner shall have judgments rendered therefor paid off by the Commissioner out of public funds. U. S. v. Frerichs, 124 U. S. 315, 8 Sup. Ct. 514, 31 L. Ed. 470. And to all purposes it is an action against the government. DeSaussure v. Gaillard, 127 U. S. 216, 8 Sup. Ct. 1053, 32 L. Ed. 125; Arnson v. Murphy, 115 U. S. 579, 6 Sup. Ct. 185, 29 L. Ed. 491; Cheatham v. U. S., 92 U. S. 85, 88, 23 L. Ed. 561. In this last case Justice Miller covers the entire situation both as to the collection of the taxes, and then the corrective justice in allowing a suit against a collector of customs and internal revenue when the administrative officers fail to do justice to the individual from whom an illegal tax has been exacted.

So that I conclude:

The collector personally was not in the wrong, and not a trespasser, and that he could not do otherwise than collect.

The money thus collected was paid under protest, and thereby was an implied promise to refund it, as it was not owing.

The collector was acting for the government, and it is the duty of his office to refund, and it is the duty of the Commissioner to furnish the money with which to refund.

The money was collected as a whole and was not divisible, and collected as one act, and with one promise to repay.

Counsel for defendant first isolate part of a sentence of Justice Clifford in his opinion in Andreæ v. Redfield, 98 U. S. 225, 25 L. Ed. 158, and base an argument thereon. It is needless to say that an opinion on

the question of waiver of the statute of limitations is not an authority on any question presented in this case.

The demurrer will be overruled.