PHILADELPHIA, H. & P. R. CO. et al. v. LEDERER, Collector of Internal Revenue.

(District Court, E. D. Pennsylvania.   January 18, 1917.)

Nos. 3256–3280.

1. INTERNAL REVENUE ⬤⟳38—EXCISE TAX—ACTION TO RECOVER—ISSUES.

In a suit to recover the excise tax erroneously paid by a corporation which was not doing business but merely leasing its property to another which operated its railroad and paid a fixed rental therefor, the lease cannot be collaterally attacked by showing that the lessee claimed under it as assignee though the lease was not assignable.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬤⟳38.]

2. ABATEMENT AND REVIVAL ⬤⟳53—DEATH—RECOVERY OF CUSTOMS DUTIES— ACTION ON IMPLIED CONTRACT.

An action to recover internal revenue taxes erroneously collected is assumpsit on an implied contract, and survives against the personal representatives of the collector if he dies pending the suit.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 251, 252; Dec. Dig. ⬤⟳53.]

3. INTERNAL REVENUE ⬤⟳38—TAX ILLEGALLY COLLECTED—PARTIES—SUCCESSORS IN OFFICE.

In the absence of statute, one from whom internal revenue was illegally collected cannot recover the amount from the successor in office of the collector who made the collection.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬤⟳38.]

4. INTERNAL REVENUE ⬤⟳38—TAX ILLEGALLY COLLECTED—RECOVERY—STATUTE.

Act March 3, 1863, c. 76, § 12, 12 Stat. 741 (Comp. St. 1913, § 1635), providing that, when a recovery is had against a collector of the revenue for any money exacted by him and paid into the treasury and the court certifies that there was probable cause for the act of the collector, no execution shall issue against his property, but the judgment shall be paid out of the treasury, does not make the suit one against the officer in his official capacity, so as to permit recovery against him for money collected by his predecessor in office, since the granting or refusal of the certificate of probable cause is within the discretion of the court, and if it were refused the officer would be held liable for money which he never received.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬤⟳38.]

5. INTERNAL REVENUE ⬤⟳38—RECOVERY OF TAX—SUCCESSOR IN OFFICE—STATUTE.

Act Feb. 8, 1899, c. 121, 30 Stat. 822 (Comp. St. 1913, § 1594), providing that suits begun against officers of the United States in their official capacity may be continued against their successors in office, does not authorize the institution of a suit against an internal revenue collector for taxes erroneously collected by his predecessor in office against whom no action was brought; plaintiff's remedy being by proceeding against the predecessor under Rev. St. § 3226 (Comp. St. 1913, § 5949), or by proceeding under Judicial Code, § 24, par. 20 (Act March 3, 1911, c. 231, 36 Stat. 1093 [Comp. St. 1913, § 991]).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬤⟳38.]

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

At Law. Action by the Philadelphia, Harrisburg & Pittsburgh Railroad Company and others against Ephraim Lederer, Collector of Internal Revenue for the First Collection District of Pennsylvania. On defendant's motion for a new trial and for judgment upon a point of law reserved. Motion denied.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiffs.

Edward S. Kremp, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The several railroad companies, plaintiffs, brought suit to the use of the Philadelphia & Reading Railway Company, as lessee of their railroad properties, against Ephraim Lederer, as United States collector of internal revenue, for taxes for the fiscal years 1909, 1910, 1911, and 1912, paid under protest as special excise taxes with respect to the carrying on or doing of business by them as corporations organized for profit and having capital stock represented by shares, under the provisions of section 38 of the act of Congress approved August 5, 1909 (Act Aug. 5, 1909, c. 6, 36 Stat. 112 [Comp. St. 1913, §§ 6300–6307]). By agreement of counsel, the cases were tried together before the same jury.

It was alleged in the statements of claim, and proved at the trial, that the several plaintiff corporations were not actively engaged in the operation of their railroads, but that the Philadelphia & Reading Railway Company was, during the period in question, operating them under lease, and that the income for which return was made and the taxes in question collected was received by the several plaintiffs as rental for their roads and distributed by them as dividends to their stockholders. The facts in relation to the carrying on of business by the plaintiffs, as shown by the various leases under which the railroads were operated, clearly brought all of the plaintiffs within the law as laid down in the Minehill Case, 226 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842.

[1] As to the Philadelphia, Harrisburg & Pittsburgh Railroad Company, it was contended on behalf of the collector that the Philadelphia & Reading Railway Company was not operating the road as lessee, because it claimed as assignee under a lease which was not upon its face assignable. As the testimony conclusively showed that the rental had been paid to the plaintiff as lessor, and that the road had been, since the assignment, operated by the Philadelphia & Reading Railway Company, under the terms of the lease, no sufficient ground is presented for a collateral attack upon the lease.

The principal contention in the case, however, was based upon the fact that the taxes for 1909, 1910, and 1911 were not paid to or collected by the defendant, but were paid to and collected by his predecessor in office, William McCoach. It was therefore contended on the part of the defendant that, even if all the taxes were unlawfully collected under the decision in the Minehill Case, a verdict and judgment could not go against him for the taxes paid to Collector McCoach. Upon the conclusion of the evidence, the court, after some

preliminary comment, directed a special verdict in each case in the following language:

"You are therefore instructed to find a verdict in favor of the plaintiff for taxes paid to Mr. McCoach for 1909, 1910, and 1911, the sum of * * *, and for the amount paid to Mr. Lederer for the year 1912, the sum of * * * the amounts in each case being inclusive of interest from the date of payment. This verdict is found subject to a point of law reserved by the court as to whether under the evidence the plaintiff is entitled to recover anything for the taxes paid to Mr. McCoach."

The jury returned a special verdict in each case accordingly.

[2] The cause of action in these cases is assumpsit upon an implied contract to return money unlawfully received. The nature of the action is clearly determined in the case of Patton v. Brady, Ex'x, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713, where Mr. Justice Brewer reviews the prior cases, and it is held that, where a collector dies pending the suit, the suit survives against his personal representative. That upon a judgment in such an action the collector is personally liable and execution can, except for statutory provisions, be had against his property, there appears to be no doubt.

In suits brought against collectors of the revenue for acts done by them or for the recovery of money exacted by or paid to them and by them paid into the treasury, Congress by the Act of Sept. 24, 1789, c. 20, 1 St. 92, re-enacted by the Act of March 3, 1863, c. 76, § 13, 12 St. 741, made it the duty of district attorneys to appear in behalf of the defendants in such suits unless otherwise instructed by the Secretary of the Treasury. Rev. Stat. § 771 (Comp. St. 1913, § 1296). And, in order to protect collectors from personal liability for official acts in proper cases, by section 12 of the Act of March 3, 1863, Rev. St. § 989 (Comp. St. 1913, § 1635), Congress provided:

"When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him, or for the recovery of any money exacted by or paid to him and by him paid into the treasury, in the performance of his official duty, and the court certifies that there was probable cause for the act done by the collector or other officer, or that he acted under the directions of the Secretary of the Treasury, or other proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the treasury."

[3] There is no principle of the common law by virtue of which a plaintiff, whose money has been unlawfully taken by a collector of internal revenue, who, but for the provisions of section 989, would be liable to have his individual property taken in execution upon a judgment rendered in a suit brought against him, can recover the amount thus taken from the collector's successor in office who has had nothing to do with the unlawful taking.

[4] It is contended on behalf of the plaintiffs that, because of the provision that, upon a certificate by the court of probable cause, no execution shall issue against the collector, but the amount upon final judgment shall be provided for and paid out of the proper appropriation from the treasury, the suit has become one against the officer in his official capacity, and therefore a right of action survives

against his successor in office. With the exception of the case of Armour v. Roberts (C. C.) 151 Fed. 846, no authority has been pointed out to the court upon which this proposition is based; but, so far as proceedings for compelling the performance of official duties by mandamus or the prevention of official acts by injunction, the contrary has been in principle repeatedly held. United States v. Boutwell, 17 Wall. 604, 21 L. Ed. 721; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 17 Sup. Ct. 225, 41 L. Ed. 621; United States ex rel. Bernardin v. Butterworth, 169 U. S. 600, 18 Sup. Ct. 441, 42 L. Ed. 873; Pullman Company v. Croom, 231 U. S. 571, 34 Sup. Ct. 182, 58 L. Ed. 375.

[5] It is argued by counsel for plaintiffs, however, that a suit for taxes collected by his predecessor lies against the defendant by reason of the Act of February 8, 1899, c. 121, 30 St. 822, U. S. Comp. St. 1913, § 1594, under the provisions of which, by proper steps, successors of officers of the United States may be substituted for them in suits commenced against the latter in their official capacity. This act does not help the plaintiffs, for it in terms is intended to prevent the abatement of suits, actions, or other proceedings which have already been lawfully commenced by or against an officer of the United States in his official capacity or in relation to the discharge of his official duties, by reason of his death or the expiration of his term of office, or his retirement, or resignation, or removal from office. It is unnecessary to determine whether the act was intended to apply to suits to enforce the personal liability of a collector for taxes wrongfully collected by him in his official capacity, for in the present case no suit, action, or proceeding was brought against Collector McCoach. It is not for the courts to extend the statutory provisions by which Congress has authorized the payment out of the treasury of judgments against collectors of internal revenue and other officers. Their provisions are plain. Upon taking the steps provided for in section 3226, Revised Statutes (Comp. St. 1913, § 5949), suit could have been brought by the plaintiffs against Collector McCoach at any time after six months from the date of the appeal for refund to the Commissioner of Internal Revenue. The plaintiffs had a further remedy under the provisions of the Judicial Code of March 3, 1911, c. 231, § 24, par. 20, 36 St. 1087, 1093 (Comp. St. 1913, § 991), formerly the Tucker Act of March 3, 1887, c. 359, §§ 1 and 2, 24 St. 505, to recover the amount of taxes paid under protest. United States v. Emery, 237 U. S. 28, 35 Sup. Ct. 499, 59 L. Ed. 825.

The district attorney contends, and his contention is sound, that section 989 of the Revised Statutes does not authorize a certificate of probable cause, except in favor of the collector to whom the tax was paid, and that, if section 989 should be held to apply to a suit brought against his successor, the court might in its discretion refuse the certificate of probable cause, the granting of which is discretionary and not reviewable, as decided in the case of United States v. Abatoir Place, 106 U. S. 160, 1 Sup. Ct. 169, 27 L. Ed. 128, and thereby the present collector would become personally liable for the act of his predecessor. While, under the facts in the present case, prob-

able cause would no doubt be shown if the taxes for 1909, 1910, and 1911 came within the provisions of section 989, the court would, in granting such a certificate in this case, go beyond the plain terms of the statute. The present question was before Judge Augustus N. Hand in the case of Roberts v. Lowe (D. C.) 236 Fed. 604, upon demurrer to a complaint, and the same conclusion reached by him. I concur with Judge Hand in finding no sufficient basis for the contrary conclusion reached by Judge Smith McPherson in the case of Armour v. Roberts (C. C.) 151 Fed. 846.

Judgment will be entered upon the special verdict for the plaintiff for the amount of the taxes paid to Collector Lederer for the year 1912 in each case. In view of the decision in the Minehill Case, the defendant's motions for new trial are refused.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes