**TOLEDO RYS. & LIGHT CO. v. McMAKEN, Collector of Internal Revenue (two cases).**

Nos. 2360, 2361.

District Court, N. D. Ohio, W. D.

Oct. 31, 1936.

Supplemental Opinion Nov. 28, 1936.

Welles, Kelsey & Cobourn, of Toledo, Ohio, for plaintiff.

W. B. Waldo, Sp. Asst. to Atty. Gen., and Gerald P. Openlander, Asst. U. S. Atty., of Toledo, Ohio, amici curiæ.

KILLITS, District Judge.

Petitions in these cases were filed on the same day, October 16, 1912, to recover of the defendant the sums of $3,066.82 and $2,248.52, respectively, excise taxes upon net income of the plaintiff, alleged to have been unlawfully demanded, and paid under protest by the plaintiff, and attempted to be assessed and collected under the Act of August 5, 1909 (36 Stat. 11). The actions were begun within the pertinent limitations of the applicable statute, section 3226, R.S., 26 U.S.C.A. § 156 (see 26 U.S. C.A. §§ 1672–1673 note), but the day does not appear exactly when, in either case, the limitation of the statute actually commenced to operate. They followed the rejection, in each case respectively, by the Commissioner of Internal Revenue of the plaintiff's demand for refund. It can be said with certainty that the statute of limitations in each case was effective to bar action much prior to the 1st of July, 1916. Appearing through the district attorney, under the provisions of R.S. § 771 (28 U.S.C.A. § 485), the defendant McMaken answered, raising an issue on the merits in each case, on April 22, 1913.

After several settings for trial the cases were reached July 1, 1918. Then the plaintiff moved, in each case, to substitute for defendant, McMaken, who vacated his office in 1914, his successor, Collector Niles. The language in each motion was as fol-

lows: "Now comes The Toledo Railways and Light Company, plaintiff in the above entitled action, and moves the court for an order substituting for the defendant, his successor in office, Frank B. Niles, as collector of internal revenue as defendant herein."

These motions, not being resisted, identical orders of substitution, drawn and presented by plaintiff's counsel, were entered. They read as follows:

"This first day of July, 1918, came on for hearing upon the motion of the plaintiff for an order substituting for the defendant herein his successor in office, Frank B. Niles, as defendant herein and the court being fully advised in the premises,

"It is ordered that said motion be and is hereby granted and Frank B. Niles, as collector of internal revenue, is hereby substituted for William V. McMaken as collector of internal revenue as defendant herein."

Defendant Niles appearing with the then district attorney as his counsel, pursuant to the provisions of section 771, R.S., 28 U.S.C.A. § 485, and a jury being waived, trial was immediately had and the causes submitted, subject to briefing, which proceeded very leisurely.

No action was taken thereafter until September 4, 1919, when Niles, through the district attorney, moved a dismissal of each cause, for the reasons, among others, that " * * *

"2. For the reason that the substitution of the defendant, Frank B. Niles, for that of Collector William V. McMaken, by order of this court made July 1st, 1918, upon the motion of the plaintiff herein for the reason that it is the contention of the defendant that the substitution for the original plaintiff in these actions is a bar as against any judgment which might be entered herein against the substituted defendant or the original defendant herein.

"3. For the reason that the substitution of a new sole defendant works the complete and voluntary dismissal of the action against the former Collector and a new suit on the same causes of action cannot be brought against the original defendant, as the statute of limitations has run in his favor. * * *"

Again there was leisurely briefing. March 23, 1922, the motions to dismiss were granted in a memorandum, citing Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713; Roberts v. Lowe (D.C.) 236 F. 604, 605; Sage v. U. S., 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; and Smietanka v. Indiana Steel Company, 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99. Following a discussion of these authorities we said: "It follows that a substitution of Collector Niles for the original defendant, who was his predecessor in office, was without the law. As that action was demanded by the plaintiff, and as, by it, McMaken has been dismissed, there is here what amounts to a voluntary dismissal of the cause of action itself."

In Third Nat. Bank & Trust Co. v. White, 58 F.(2d) 411, 412 (D.C.Mass.), a somewhat similar situation was before the court, resulting in an order granting a motion to dismiss as in the instant case. The decision and its cited authorities emphasize the point, equally applicable to the question here, that the substitution in that case effected "the commencement of a new and independent proceeding to enforce" the liability attempted to be established in plaintiff's actions (Davis v. L. L. Cohen & Co., 268 U.S. 638, 642, 45 S.Ct. 633, 69 L.Ed. 1129). Such "new and independent proceeding," however, could have no standing because when, July 1, 1918, Niles was brought in, at the instance of plaintiff, the applicable statute of limitations, section 3226, 26 U.S.C.A. § 151 (see 26 U.S.C.A. §§ 1672–1673 note), had barred it for approximately three years.

▇ Through oversight our finding for dismissal was not reduced to a formal order. This situation is argued to us in support of a theory that there was no operative final dismissal. With this we have no sympathy.

What erected a situation which required no other formal action by the court than a dismissal followed by a judgment against the plaintiff for costs was the clear result of proceedings had by the voluntary conduct of the plaintiff. Although this conduct inevitably destroyed its right to recover, however meritorious, nevertheless the plaintiff, acting upon its own volition, invited it.

So clear is this that no invasion of any right of plaintiff would follow should we now direct a nunc pro tunc order of dismissal, with judgment for costs, as indicated in the preceding paragraph, effective as of March 23, 1922; Mitchell v. Overman, 103 U.S. 62, 65, 26 L.Ed. 369; Cuebas y Arredondo v. Cuebas y Arredondo, 223 U. S. 376, 390, 32 S.Ct. 277, 56 L.Ed. 476. To do so may seem paradoxical, considering

that we adhere to the view that each of said causes was finally, although informally, dismissed over fourteen years ago, such action seems both reasonable and provident, however, when it is noted, as will be shown hereafter, that the plaintiff is insisting now that each of said actions yet depends undisposed. If that position has any support, such a clarifying order is called for; if, as we think, the position is untenable, to enter it works no prejudice to plaintiff.

■■■ Twelve days (April 3, 1922) after the memorandum to support an order of dismissal of these causes was filed, a verified motion, identical in each case, carrying this language: "Now comes The Toledo Edison Company, plaintiff under its former name The Toledo Railways and Light Company and represents to the Court that in filing its motion herein asking that Frank B. Niles, the successor in office of William V. McMaken, the original defendant, as Collector of Internal Revenue, be substituted for said William V. McMaken as defendant herein, plaintiff did not intend to voluntarily dismiss this action as to said William V. McMaken, or to discontinue the prosecution of this cause of action, but on the contrary intended to continue to press the prosecution of the cause of action set forth in its petition herein, and plaintiff now moves the court for an order vacating and setting aside the order heretofore entered herein substituting Frank B. Niles as defendant herein for the original defendant, William V. McMaken and reinstating said William V. McMaken of record as the defendant herein," McMaken, without consulting his statutory counsel, the district attorney, indorsed on these motions his consent "to the granting of the foregoing motion to vacate the order substituting Frank B. Niles as defendant herein and to reinstate him as party defendant in said case."

Five years were allowed to pass during which the court's attention to the alleged causes was not invited, nor were any filings made, when, April 18, 1927, McMaken having died and letters of administration on his "estate" having been taken out in proceedings which showed that the estate had no substantial assets available to meet any judgment against it, the following identical "entry of appearance" and motion was filed: "Now comes Georgie D. McMaken, as the duly appointed and qualified administratrix of the estate of William V. McMaken, deceased, and hereby waives the issuance and service of process, enters her appearance as defendant herein, and joins in the consent of William V. McMaken, the original defendant herein, to the granting of the Motion of the plaintiff, heretofore filed herein, to vacate the order substituting Frank B. Niles, as defendant herein, and to reinstate William V. McMaken as party defendant herein."

It seems advisable to scrutinize the curious motion, second above quoted, in the light of the record already made. It is the foundation upon which are builded all of the many efforts made afterward to retrieve mistakes of fatal consequence. The question it raises is: Did the motion of July 1, 1918, state exactly, and without omissions or reservations, what was meant it should accomplish? Its language is clear and unequivocal—superficially it was designed to do exactly what, and nothing more, it did do, i. e., to place Collector Niles in the precise attitude as defendant which the pleader had provided for his predecessor, McMaken, to the permanent exclusion, thereafter, of the latter. We can see clearly from the subsequent record that that was then the state of mind of counsel. These motions of April 3, 1922, were vulnerable to an attack to strike from the files.

That when these actions were brought, and when the Niles substituting motions were filed, and up to the dismissal decision of March 23, 1922, counsel were obsessed with and, in face of clear warnings of error, pertinaciously adhered to the opinion that the actions were against McMaken *in his official capacity alone,* and that they came within the provisions of the Act of February 8, 1899, 28 U.S.C.A. § 780 and note, consideration of the briefing on the Niles motion to dismiss, granted in 1922, will show beyond question.

Contemporaneously with the filing of the Niles motion, September 4, 1919, the district attorney filed a supporting brief, two points of which, sufficient for present uses, were as follows:

### "Point I.

"The action was against the preceding collector personally, Roberts v. Lowe (D. C.) 236 F. 604, 605; Philadelphia, H. & P. Ry. Co. v. Lederer (D.C.) 239 F. 184, 186; Sage et al. v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828, U. S. Supreme Ct. May 19, 1919.

### "Point 2.

"The Act of February 8, 1899, c. 121, 30 Stat. 822 (28 U.S.C.A. § 780 note) does not

apply. Patton v. Brady, Executor, 184 U. S. 608, 614, 22 S.Ct. 493; 46 L.Ed. 713; Philadelphia v. Collector, 5 Wall. 720, 18 L.Ed. 614; Roberts v. Lowe (D.C.) 236 F. 604, 605; Philadelphia, H. & P. Ry. Co. v. Lederer (D.C.) 239 F. 184, 186; Pullman Company v. Croom, 231 U.S. 571, 34 S.Ct. 182, 58 L.Ed. 375. * * *"

The brief followed with an exhaustive argument, fortified with many citations and case quotations on each point, which should have caused, at least, serious questioning whether the cases had not been wrongly brought.

Nevertheless plaintiff's reply brief of fifteen pages, filed December 20, 1920, argues strenuously that the Act of February 8, 1899 (28 U.S.C.A. § 780 note), does apply, and that it permits just what was attempted here, substitution, in *official capacity* as defendant, the successor of McMaken, also sued only in *his* official capacity. This paragraph from the fourteenth page of this brief states the counsel's position: " * * * We agree with defendant's contention that the action is one sounding in contract and not in tort, that there is an implied agreement to refund the tax which was collected, but was not owing. The responsibility in making the collections results from the office and is not connected (sic) with the office and is a part of the official duty of the collector. It is one of the responsibilities, which, under the act of February 8, 1899, may be passed to the successor in office. Armour v. Roberts (C.C.) 151 F. 846, 852.) * * *"

The brief closes as follows: " * * * We therefore submit that the purpose of the Act of February 8, 1899, is to protect the rights of claimants in such situations as have arisen in these cases. We believe that the authorities above referred to fully sustain us in this view."

May 18, 1921, saw the filing of the district attorney's reply brief. That takes up, first, the question whether the Act of February 8, 1899, was applicable, and discusses the only decision upon which plaintiff directly relies, Armour v. Roberts (C.C.) 151 F. 846, concluding with an observation, supported by ample authority, as follows: " * * * That this holding has not the sanction of other federal court decisions and no longer may be regarded as judicial precedent is shown by the following cases."

Counsel could have gone further—he could well have described Judge McPherson's opinion as an orphan disowned by the federal judiciary—it has fallen into oblivion.

Besides the very clear District Court holding in Roberts v. Lowe, 236 F. 604, and in the Lederer Case, 239 F. 184, both of these showing how erroneous, on the point, the Armour v. Roberts decision was, plaintiff's counsel had available as early as the fall of 1917—before, even, Niles was substituted for McMaken—the decision (Philadelphia, H. & P. R. Co. v. Lederer, 242 F. 492) of the Third Circuit Court of Appeals affirming Judge Thompson in the Lederer Case on the precise point that the Act of February 8, 1899, does not apply to such actions as those before us.

Further, this brief of the district attorney quotes from Sage v. United States, at page 37 of 250 U.S., 39 S.Ct. 415, 416, 63 L.Ed. 828, already cited in his opening brief this: "But no one could contend that technically a judgment of a District Court in a suit against a collector was a judgment against or in favor of the United States. It is hard to say that the United States is privy to such a judgment or that it would be bound by it if a suit were brought in the Court of Claims. *The suit is personal* and its incidents, such as the nature of the defenses open and the allowance of interest, are different. It does not concern property in which the United States asserts an interest on its own behalf or as trustee, as in Minnesota v. Hitchcock, 185 U.S. 373, 388, 22 S.Ct. 650, 46 L.Ed. 954. *At the time the judgment is entered the United States is a stranger.* Subsequently the discretionary action of officials may, or it may not, give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself."

Sage v. United States, of which plaintiff's counsel had notice in the district attorney's opening brief, alone should have reminded them that they were on the wrong track in these cases. Had they given this decision careful attention they could not have written the paragraph we have quoted above from their brief, and they would, at least, have seriously questioned whether the Act of February 8, 1899, was safe to follow.

Finally, the district attorney notes that, even if this act were applicable, still the causes should be dismissed, for that act permits substitution of an officer's successor,

if asked within *twelve months* only, whereas Niles had been collector, when substituted, for over four years when the motion to take him over was filed. That situation alone was sufficient to make necessary our order of dismissal of March 23, 1922, now entered nunc pro tunc.

It is difficult, after considering plaintiff's attitude, prior to March 23, 1922, just discussed, to reconcile it with the excuse offered in the later attempt to get McMaken —out for over three years—back into the causes that they might survive the effect of voluntarily taking him out by substituting his successor. It seems analogous to an effort to resuscitate an ancient corpse.

We do not recall that the motion now considered was even brought to our attention until over five years afterwards, when the administratrix, April 18, 1927, came in with her entry of appearance and a waiver of the statute of limitations.

This was argued orally and in briefs, the district attorney appearing, not as the statutory counsel—no counsel appeared thereafter for the concededly bankrupt McMaken estate—but as representatives of the government to protect it against the issue of any certificate of probable cause, should judgments in favor of plaintiff be entered.

After arguing, successfully we think, that McMaken could not be reinstated after the substituting order was granted in July, 1918, for that then he permanently went out of the case both in his private and official capacities, the district attorney made (page 3 of his brief filed June 12, 1928) this concession: " \* \* \* The contentions made in this case are on behalf of the United States, and in protection of its interests. If the suit is to go on, with consent of McMaken's estate, with private counsel defending, and with a *clear understanding that no right to a certificate of probable cause will be claimed,* then, of course, the United States has no further interest in the matter. \* \* \* "

November 28, 1928, the court filed its memorandum opinion, dealing with the issue raised by the motion of the administratrix. Therein we said:

" \* \* \* There is no question in the court's mind but McMaken, having no official relation to the government in 1922, could have revived his personal responsibility to the plaintiff, whatever it was; *but it seems entirely clear that his voluntary consent to be re-made a party defendant in each case could not work to reconnect the government with either of plaintiff's contentions and compel it to re-assume the burdens, whatever they were, involved from the planting of the suits in the first instance.* It is well argued that the filing of the motions to replace McMaken by substitution for Niles was a recognition on the part of plaintiff in each case that McMaken, personally and officially, was taken out of the case by plaintiff's motions in 1918 to substitute Niles for McMaken in 1918, and that thereby, for the time being, McMaken ceased, in any capacity, to be a party to the case. We are satisfied that the law was correctly stated in our memorandum of March 23, 1922, finding the effect of the attempted substitution of Collector Niles for Collector Mc-Maken. We do not think that failure to reduce the finding of the court by its memorandum of 1922 to a formal order in either case obviates the effectiveness of the dismissal of the cases, respectively, in 1922, so far as the government's responsibility for the outcome of either is concerned. Then we held that the application of the statute making the government responsible for the unlawful, unauthorized action of its officer to be cleared by his proper certificate of the court ceased to apply.

"The government's only interest in opposing the motion to substitute McMaken is to save this point. We are compelled to hold, on the reasoning of the government's brief, that the motion in either case is well taken *only to the extent of involving McMaken's estate personally;* and that the government, in each instance, *is clear of any responsibility,* whatever may be the outcome of either case upon the merits.

"McMaken having died, his administratrix having voluntarily appeared and consenting to a substitution of the estate, the motions to that extent are allowed. The objection of the government in each instance, so far as it is affected, is allowed. The statute of limitations had run in 1922 against the alleged cause of action if it were then not a continuing cause. We are compelled to hold that, so far as the government's incidental interest in either case is concerned, the causes of action were abated, not suspended, from the dismissal of Collector McMaken effected by the voluntary action of plaintiff in 1918 and taken at its request. Plaintiff suffers from its mistake of law which had already worked to its irretrievable loss nearly four years before its motions of 1922 were filed. From this it cannot have relief."

The order upon this decision, filed December 26, 1928, reads in part as follows, vital portions of which are here italicized:

" * * * Georgie D. McMaken, administratrix of the estate of William V. McMaken, deceased, is hereby reinstated as the defendant herein *personally, but not as a representative of the United States.*

"It is further ordered that this order shall not work to *reconnect the United States with plaintiff's contention herein or to compel it to re-assume the burdens involved from the filing of this suit.* The plaintiff duly excepts to that part of the foregoing findings and order which limits, as hereinbefore stated, the extent to which the order of substitution heretofore entered herein is vacated, and which limits the reinstatement of Georgie D. McMaken, administratrix of the original defendant, as defendant herein, as hereinbefore provided, and duly *excepts to that portion of the order to the effect that the order shall not work to reconnect the United States with plaintiff's contentions herein or to compel it to re-assume the burdens involved from the filing of this suit.*"

Thereupon, the administratrix not contesting, and being unrepresented by counsel, the district attorney being present solely to protect the government respecting the matter of the issuing of a certificate of probable cause, judgments were entered against the McMaken estate for, in each case, the full amounts claimed. The essentials in these judgments were worded as follows, with italics now used:

"This cause having come on for hearing upon the motion of plaintiff for judgment, the pleadings and the evidence, the court finds that it is unnecessary that this court should be required to re-hear the evidence upon the merits of this cause, that the parties hereto have consented to a final submission of this cause on the evidence formerly heard by the court herein, that said motion for judgment should be granted, and that judgment should be entered for the plaintiff and against the defendant herein for the full amount claimed in plaintiff's petition with interest.

"Wherefore, it is ordered and adjudged that plaintiff's motion for judgment be, and the same is hereby, granted, and it is further ordered and adjudged that plaintiff have and recover from defendant, Georgie D. McMaken, Administratrix of the Estate of William V. McMaken, deceased, *person-ally and not as a representative of the United States, the amount of Two Thousand Two Hundred Forty-eight Dollars and Fifty-two Cents ($2,248.52) and interest thereon at the rate of Six Percent. (6%) per annum from October 30, 1911, and its costs herein.*

"Plaintiff duly *excepts* to that part of the foregoing order, *which limits the judgment to Georgie D. McMaken,* Administratrix of the Estate of William V. McMaken, deceased, *personally, and does not give a judgment against said defendant as a representative of the United States.*"

The copy used above is that applicable to cause 2361. That for cause 2360 was in identical terms, save for the date of liability and the amount of judgment which therein was for $3,302.20. So plain was it that the McMaken insolvent estate was content to allow a judgment to be entered in each case for the full amount, a fact which stands admitted, that the court did not attempt to ascertain what, if any, were the actual amounts of the illegal exactions.

It is obvious, also, that, if the court conceived that afterwards an attempt would be made to demand a certificate of probable cause, it would not have allowed interest for the full period which had elapsed. The government was not responsible for the inordinate delays attending this litigation—delays which are principally, and to a very large extent, chargeable to the plaintiff.

Our successor, as the active judge of this court, having qualified, four days after the entry of these judgments we left the United States for a five months' trip abroad. January 9, while we were on the Atlantic, our successor, without being apprised of the state of the record, in fact, having been misadvised, ordered, at the request of plaintiff, certificates on each of these judgments for their several amounts and interest. Subsequently these orders were vacated and the causes are now before us on renewed motions for such certificates. These motions, plainly and for the ample reasons shown herein, we deny.

The intervening time, to the present, has been used in skirmishing for possible settlements, and in an effort to ascertain what were the merits of the actions respectively.

As, in any event, we should deny the desired certificates, the question, What is the actual indebtedness of the insolvent McMaken estate to the plaintiff, in either case?

---

---

---

**(page text begins)**

appeals to us to be so indubitably moot that we are not inclined to further consider it.

## Supplemental Opinion.

These vexatious cases, upon which the court, with an excess of patience, has already spent much more time than they deserved, again confront us upon request of plaintiff for a distribution of exceptions among the orders filed October 31, last, which we fondly but vainly hoped would forever shutter our vision of either cause.

If the plaintiff would venture an appeal, our judgment is that but one exception is needed—that already allowed (inadvertent error corrected) in the order filed in the consolidated cases directing a nunc pro tunc order of dismissal, as of March 22, 1922. If on appeal that order is approved, the end of plaintiff's hope of recovery will be finally noted—if it is reversed, the game is on again, not, we hope, to sluggishly proceed for a second quarter of a century.

As to the cases carrying the same title as those we consider as then closed, we feel that neither party is entitled to exceptions beyond those entered in the orders of December 26 and 31, 1928.

It was due the sitting judge of this court, who had endured, for sixteen years, the intermittent presentations of these causes, that to him should be presented motions for certificates upon the judgments of December 31, 1928, if, in face of the record, counsel thought that such action was warranted. To hold them until the informed judge was out of the country, and then to ask their consideration by a judge who, by his own effort, could not be fully advised save by extended study of an unfamiliar record, was inexcusable from any standpoint. To say that there was no time to bring them to our attention is not the fact. To prepare them was a matter of less than a half hour of typewriting, wherefore they could have been offered contemporaneously with counsel's presentation, December 31, of the judgment orders on which they were to be premised. Besides, it was notorious that thereafter, January 2, 3, and 4, 1929, we were at our customary desk, in an effort to close up our official affairs against a long absence. Such conduct, difficult of creditable explanation, itself seems enough to warrant a denial of further exceptions unless it may be justifiably assumed that it has been vicariously expiated through our subsequent amiable weakness in enduring these cases for another period.

Again, there may be serious question whether the statute (section 842, 28 U.S.C.A.) is available to plaintiffs in actions presented as plaintiff caused these to be tried, as we exhibit the facts in numbered paragraphs hereafter. Primarily, the statute stands to protect the subordinate who is in trouble because he but carried out the order of his superior, the Commissioner of Internal Revenue. To it section 780, 28 U.S.C.A., is a *necessary* corollary—vitally so to protect the Treasury by way of insuring a full defense conducted by the Department of Justice. It is not imaginable that a sued collector could avail himself against an adverse judgment under section 842, if he spurned the advantages of section 780.

When we regard the fact that McMaken, with the knowledge of plaintiff, consented to be "reinstated" without consulting counsel, the law provided for him; when it is noted that an administration of his insolvent estate (nonexistent in fact) was influenced by the plaintiff that the causes might be revived by substituting his personal representative, and that thereafter proceedings were had substantially ex parte, no counsel being present, or listed, for the defense, and no defense offered; when, in addition, it is manifest that the "reinstated" causes proceeded under the conditions proposed by the district attorney, quoted in our memorandum of October 31, page 8, which precluded resort by any party to section 842—then, upon the issue now raised by motions to make available that section, we feel that the proceedings to judgments may be well designated as collusive.

It is obvious that plaintiff may resort to the provisions of section 842 only when the case has come to judgment in such a way as that, throughout, the United States is protected, as it would be if its law officer defended. A duty devolved upon the plaintiff itself to bring about that condition. The time for that arrived when the court allowed its "reinstating" motions in part, only.

If, as Justice Holmes observed (Sage v. U. S., 250 U.S. 33, 39 S.Ct. 415, 63 L. Ed. 828), it is discretionary whether certificates should be allowed, these cases proceeded to judgments in such a manner that a negative exercise of such a power is plainly indicated.

But we are not disposed to refuse plaintiff whatever comfort or protection may

abide in exceptions, wherefore the orders denying certificates filed October 31, last, are directed to be vacated, to be entered, after amendment, contemporaneously with the filing of this supplemental memorandum in which we embody numbered statements of fact and law as additions to the statements of fact carried in the foregoing considerations, statements which are to be considered as if hereinafter made:

1. The original actions, begun in 1912, were against McMaken officially, i. e., in his capacity of collector of internal revenue; there was no implication, even, that they were intended to also attack him as an individual.

2. These causes were finally dismissed, March 23, 1922, on the motions of the district attorney.

3. At the time of such dismissal the applicable statute of limitations barred the beginning of new actions on the merits attempted to be set up in the dismissed causes.

4. The McMaken estate, following the motions of plaintiff of April 12, 1922, and April 18, 1927, was defending entirely new actions, distinctly different from those concluded March 23, 1922, in that the defendant individual sought to be made a party by his consent (see motion of April 12, 1922) was not a party to either of the actions of 1912.

5. In allowing plaintiff's "reinstating" motions, neither was wholly sustained—the allowance was in part only, and conditional that the act providing for certificates of probable cause should not be resorted to in case judgments therein should be directed. Neither did the court grant that part of the motions asking that the order of July 1, 1918, providing for the substitution of Collector Niles for Collector McMaken as sole defendant in the original cases, be vacated.

6. The court, in its orders upon the so-called "reinstating" motions, did not attempt a revivor of the original actions, nor did the order have that effect.

7. On April 12, 1922, when McMaken consented to be "reinstated," he was, for want of means, proof against any judgment which might have ensued against him, and thereafter his insolvency and that of his estate continued unrelieved.

8. Administration on McMaken's estate and the appointment of Mrs. McMaken as administratrix were had at the instance of plaintiff for its convenience.

9. Proceedings to judgment in the so-called "reinstated" causes were wholly non-adversary, substantially ex parte, without defense or appearance of counsel. The judgments therein were severally by consent of the administratrix.

10. There were no facts before the court upon which an ascertainment of the merits of plaintiff's contentions might be had, save a partial record made in the old cases, July 1, 1918, which was quite substantially inadequate to that end.

11. There was no hearing of any kind in such causes between December 26, 1928, when the court's order was filed allowing the "reinstatement" of the causes, and the allowance of judgments, five days afterward.

12. The only attention given to these causes by the United States through its district attorney was to see that the conditional limitations of the "reinstatement" were noted in the orders.

13. There is no provision of law for ordering certificates of probable cause that the judgments of December 31, 1928, may be paid out of the Treasury of the United States.

14. Since June, 1929, in all hearings and considerations dealing with the merits of plaintiff's claims in either of these cases, the Attorney General and assistants, as well as the district attorney and assistants, have appeared wholly by invitation of the court, and entirely in the capacities of amici curiæ.

It is thought that this memorandum, with the statements of fact and law therein, is opportune in case appeal is attempted, especially as the United States—the only party really interested in the matter—is not a party to the case.

Supplementing our observations, citations, and quotations in our memorandum of October 31, last, little comment on the foregoing statements is called for, if attention is given to the necessary effect of the various proceedings, orders, and so forth, disregarding sloppiness of language and ambiguities of verbiage, possibly appearing therein.

■ The crux of plaintiff's position at this time is whether McMaken was sued both *officially* and *individually* in the first instance. Aside from the fact that such could not have been done for that there would have been a confusing of different

actions, subject to nonapposite procedures, but it is inconceivable that it was ever attempted. Of course, had it come to the attention of plaintiff's counsel that the actions were prosecutable against McMaken solely in his personal capacity, a motion to disregard the words in the caption of the cases, "Collector of Internal Revenue," as mere descriptio personæ, would have been granted and the causes could have proceeded regularly under the egis of section 842; but the terms both of the motions to substitute Niles and of the orders thereon, both drawn by plaintiff's counsel, show that it was not counsel's understanding that the causes of action were anything but against.McMaken officially.

The motion is to "substitute for the Defendant his successor in office * * * as Collector, etc. as Defendant herein," while the orders are more explicit; vide the second paragraph where Niles is substituted as collector for McMaken "as Collector of Internal Revenue as Defendant herein." Our memorandum of October 31, last, deals with this subject in the review of the brief of plaintiff's counsel on the motions of the district attorney to dismiss both Niles and the cases.

It follows that neither McMaken nor his estate was ever "reinstated" as defendant in the original cases. What happened was not reoccupation of a former position, but the assumption of a defense to which he, personally, had theretofore been a stranger. To allow the new causes to proceed meant a waiver of a controlling statute of limitations by McMaken, which happened, but McMaken was not competent, thereby, to bring into operation, after judgment, section 842.

Plaintiff is allowed exceptions to each of the foregoing statements of fact and law and to this memorandum wherever, elsewhere therein, it attempts a statement of fact.

We allow no exceptions to our denial of the motions on file in the name of the administratrix defendant, first, because the McMaken estate has hardly an academic interest in obtaining certificates to protect it from execution, and, second, because no one appears for it competent to request exceptions. We think that, in a case to which section 842 is applicable, and where the defendant is insolvent, the judgment plaintiff may ask for certificates irrespective of what the defendant may do. We have no such case here.